# CASES AT LAW

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY

JUNE TERM, 1916.

---

DANIEL C. H. BROST, BY HIS NEXT FRIEND, CHARLES BROST, APPELLANT, v. WHITALL-TATUM COMPANY, RESPONDENT.

Submitted July 10, 1916—Decided November 20, 1916.

1. Compensation for injuries to an employe is recoverable under the provisions of the Workmen's Compensation act (*Pamph. L.* 1911, *p.* 134) if the contract of hiring be made after that act went into effect, unless there was, as a part of the contract, an express statement in writing prior to the accident, either in the contract itself or by written notice from either party to the other, that the provisions of section 2 of the act were not intended to apply; which notice, in case of a minor, is required to be given by or to his parent or guardian.

2. Where a minor employe received his pay in an envelope, upon which were printed words warning him that the provisions of the act were not intended by the employer to apply to its contract of hiring with him, and the boy gave his wages to his father in such envelope, who (the father) after receiving it and with such notice in his mind permitted the boy to go to work afterward, the provision in the act as to notice that it was not intended to apply was satisfied. *Troth* v. *Millville Bottle Works*, 86 *N. J. L.* 558; *S. C., ante p.* 219, distinguished.

3. Where a statute provides for the giving of a notice but does not prescribe the manner of its service, it is sufficient if actual notice to the person to be affected is conveyed to him.

4. The provision in section 1 of the Workmen's Compensation act (*Pamph. L.* 1911, *p.* 134), that an injured employe's right to compensation shall not be defeated upon the ground that he assumed the risks inherent in, or incidental to, or arising out of, his employment, or arising from the failure of the employer to provide and maintain safe premises and suitable appliances (which ground of defence is, by the act, abolished), is constitutional.

On appeal from the Supreme Court.

For the appellant, *Wescott & Weaver.*

For the respondent, *Walter H. Bacon.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. The plaintiff, a minor aged nineteen years, brought suit by his next friend, who is his father, against the defendant corporation for physical injuries resulting to him while working as an assistant to glassblowers in the defendant's factory. The gravamen of the action was that the defendant at its factory maintained a mold hole over which boards were placed, and that in carrying materials from one part of the plant to another, it was necessary for the plaintiff to cross over it; that the defendant failed to keep the boards over the mold hole in a reasonably safe condition, and that as plaintiff was in the act of walking over the boards, without fault on his part, he slipped and fell into the mold hole because the boards were inadequate, unsafe and unguarded, and sustained injury. The suit was not one under the Workmen's Compensation act, but one at common law.

When the plaintiff rested, counsel for the defendant moved to nonsuit (1) because plaintiff's claim to compensation was governed by the Workmen's Compensation act under which he did not sue, and, if denied on that ground, then (2) because no negligence on the part of the defendant had been

shown, and (3) because the risk was an obvious one and was assumed by the plaintiff. The trial judge sustained the motion on the first ground, and, consequently, he did not consider or decide the other grounds. We think he erred.

The contract of hiring was made after the Workmen's Compensation act (*Pamph. L.* 1911, *p.* 134) went into effect, and, therefore, compensation would be recoverable under it, unless there was, as part of the contract, an express statement in writing prior to the accident, either in the contract itself or by written notice from either party to the other, that the provisions of section 2 of the act were not intended to apply. The plaintiff being a minor, the notice would have to be given by or to his parent or guardian (father in this case) (*Pamph. L.* 1911, *pp.* 136, 137), and the case on this phase turns upon the question of notice.

On the pay envelope delivered by the defendant to the plaintiff, there was printed these words:

"Employes take notice that provisions of section 2 of the Employers' Liability act, approved April 4th, 1911, chapter 95 of the law of 1911, are not intended by this corporation to apply to its contract of hiring with you."

The boy gave his wages to his father when he was home, and, when he was not, to his mother. His father testified that he received at least one of the pay envelopes with the printed notice on it. and with that notice in his mind let the boy go to work afterward.

Counsel for respondent argues that this case is within that of *Troth* v. *Millville Bottle Works,* 86 *N. J. L.* 558; *affirmed, ante p.* 219. In that case a notice precisely the same in effect, and almost identical in language, was posted in the defendant's works and also given to its employes through the medium of a pay envelope, and it was held in the Supreme Court that when section 2 of the act is not intended to apply to the employment of minors, a notice must be given by or to the parent or guardian of the minor, and that notice posted in the works and given by means of a pay envelope does not suffice. There was no holding to the effect that if the parent or guardian of the minor saw the posted notice or the notice

on the pay envelope that it would not amount to legal notice, only that such notice was not in and of itself sufficient.

In the Troth case an order had been made by the judge of the Cumberland Pleas that the Millville Bottle Works pay Troth, a minor, a certain amount as compensation for injury received by him while at work for the company. In the Supreme Court it was contended, *inter alia,* that the employer had given notice to the employe of the fact that it would not be bound by section 2 of the Workmen's Compensation act; but it was not proved that the notice, posted in the works and given to the minor through the medium of the pay envelope, had come to the knowledge of the boy's father, and the Supreme Court sustained the order for compensation under the act. In the affirming opinion in the Troth case in this court, the question of notice was upheld on the reasoning upon which the Supreme Court based its conclusion.

Now, a marked difference between the want of notice in the Troth case, and the fact of notice in the case at bar, is apparent. In the Troth case, although notice was posted and also printed on the pay envelope, it never reached the parent of the minor. In the case at bar, the notice printed on the pay envelope reached the father of the minor, and he permitted his son to continue at work after the actual receipt of the notice, and with that very notice in his mind. The two cases are clearly distinguishable.

It is to be observed that the Workmen's Compensation act does not prescribe the *form* of notice to be given by or to the parent or guardian of a minor employe, to prevent the operation of the act upon the contract of hiring, nor of the manner of *service* of such notice. It appears, therefore, that actual notice is all that is necessary to bring the given contract within the purview of the statute.

In *Wilson* v. *Trenton,* 53 *N. J. L.* 645, this court had before it the question of service of a notice of an assessment for the laying out and opening of a street in Trenton, the charter of which city requires that notice be served upon residents. It is not perceived that a statute, requiring the giving of a notice of an assessment for the laying out and open-

ing of a street, differs in regard to the manner of service from one requiring notice that the Workmen's Compensation act is not to apply in a given case, the method of service not being provided for in either statute. In Wilson *v.* Trenton, Mr. Justice Magie (afterwards Chancellor), speaking for this court, observed (at *p.* 648) that "if the required notice is conveyed to the person to be affected thereby, it is sufficient." In the case at bar, as already shown, the notice was actually conveyed to and received by the boy's father.

We are of opinion that there was due service in this case of the notice that the Workmen's Compensation act should not apply, and, therefore, the plaintiff's suit was properly brought at common law. This conclusion makes it necessary for us to consider one of the other two reasons upon which the motion to nonsuit was rested, namely, (2) that no negligence on the part of the defendant was shown; and it would also make necessary consideration of the remaining reason, namely, (3) because the risk was an obvious one and was assumed by the plaintiff, if it were not for the provision of section 1, paragraph 2 of the Workmen's Compensation act, which abolishes the 'common law defence of assumption of risk in this class of cases. *Pamph. L.* 1911, *p.* 134.

Although the nonsuit in this case was grounded upon only one of the three reasons urged, nevertheless, if one or both of the other two reasons, which the trial judge ignored, were valid, the judgment would have to be sustained. And this because a judgment upon nonsuit will be affirmed if correct on any legal ground, although the reason assigned by the trial court be erroneous. *Gillespie* v. *W. J. Ferguson Co.,* 78 *N. J. L.* 470.

As to defendant's negligence: The plaintiff's suit is predicated upon the theory of defendant's negligence. Of course, if the defendant had not been in anywise negligent, the judgment of nonsuit would be right, although rested upon other ground. The condition of the covering of the mold hole, namely, the loose board with a hole in it, which had existed for a long time, and which made possible such an accident

as that which happened to the plaintiff in the course of his employment, made the question of defendant's negligence one for the jury.

As to assumption of risk: The provision in section 1 of the act on this score is, that the right to compensation shall not be defeated upon the ground that the injured employe assumed the risks inherent in, and incidental to, or arising out of his employment, or arising from the failure of the employer to provide and maintain safe premises and suitable appliances, which ground of defence is, by the act, abolished. This enactment is constitutional according to our decisions.

In *Sexton* v. *Newark District Tel. Co.*, 84 *N. J. L.* 85, there was reviewed on *certiorari* in the Supreme Court a judgment of the Essex Pleas in an action under the Workmen's Compensation act, called in that case "the Employers' Liability act," and one of the questions was as to whether section 2, prescribing compensation for injuries, applied. It was held that it did, and the judgment was affirmed. Mr. Justice Trenchard, speaking for the Supreme Court, observed (at *p.* 92) that it was necessary to consider the objections raised as they might be applicable to either section (1 or 2) of the act. Among the objections and reasons for reversal were that the act violated the "due process of law" and "equal protection of the laws" provisions of the federal constitution, and that it impaired the obligation of contracts in violation of the state and federal constitutions; and it was held (at *p.* 94) that as against the objections raised, section 1 of the act was clearly a valid and constitutional enactment. This case was affirmed in this court (*Ibid.*, 86 *Id.* 701) but the question of the constitutionality of the abolition of the assumption of risks doctrine was not passed upon in the opinion.

In *Waibel* v. *West Jersey and Seashore Railroad Co.*, 87 *N. J. L.* 573; this court had before it the question whether chapter 278 (*Pamph. L.* 1910, *p.* 490), modifying the defence of contributory negligence in actions to recover damages for injuries or death occurring at railroad crossings, in certain circumstances, was valid. The constitutional ob-

jection urged was that the statute violates the provision guaranteeing the right of trial by jury, and, while Mr. Justice Trenchard, who wrote the opinion, observed (at *p.* 576) that it was not perceived how or in what manner the act violated that provision, he went on to say (at *p.* 577) that what the act did was to require the trial judge to submit the question of contributory negligence to the jury; that it was true that theretofore in that class of cases, whenever the proof clearly showed contributory negligence, the trial judge was required to nonsuit the plaintiff, but that even regarding it as a rule of the common law, the right to a nonsuit, upon the ground of contributory negligence, was not entrenched behind any constitutional provision and was not originally created by legislative action; that it was a rule established by the courts, and that we have held, in effect, that common law defences may be modified or even abolished by the legislative power, where the cause of action arose after the legislative provision became effective, citing *Sexton* v. *Newark District Tel. Co., supra,* and *Second Employers' Liability Cases,* 223 *U. S.* 1, wherein the Supreme Court of the United States held that a person has no property or vested interest in any rule of common law, and that while rights of property which have been created by the common law cannot be taken away without due process, yet the law itself as a rule of conduct may be changed at the will of the legislature, unless prevented by constitutional limitations. It was also observed in the opinion in the Waibel case (at *p.* 577) that our Supreme Court in *Quigley* v. *Lehigh Valley Railway Co.,* 80 *N. J. L.* 486, had sustained the constitutionality of the Employers' Liability act of 1909 (*Pamph. L., p.* 114) which regulated the common law defence of employers, and that this court in *Brown* v. *Erie Railway Co.,* 87 *Id.* 487, sustained and applied chapter 35 (*Pamph. L.* 1909, *p.* 54) and chapter 96 (*Pamph L.* 1909, *p.* 137), both somewhat similar in purpose and effect to the statute then under consideration in the Waibel case, although no suggestion was made in the Brown case that these enactments were beyond the power of the legislature.

A decision in a sister state directly in point on the question now under consideration is that *In re Opinion of Justices (Mass.)*, 96 *N. E. Rep.* 308—approvingly quoted from in the Waibel case (at *p.* 578)—in which, as far as applicable to the case at bar, it was held that the rule relating to assumption of risk having been established by the courts and not by the constitution, the legislature may change or repeal it as a defence. As already observed, it was expressly held in the Waibel case (at *p.* 578), that the rule abolishing the court's power to nonsuit a plaintiff in an action to recover for injuries or death of a traveler at an unguarded highway grade crossing, having been established by the courts, the legislature might change it by providing that the plaintiff should not be nonsuited on that ground, but that that question should be left to the jury to determine.

We cannot perceive any difference in principle between the modification of the defence of contributory negligence under chapter 278 (*Pamph. L.* 1910, *p.* 490) sustained as constitutional by this court in the Waibel case, and the abolition of the defence of assumption of risks contained in the statute under consideration in the case at bar. In our opinion, assumption of risks by an employe is no longer available as a defence to employers when the given accident happened after the Workmen's Compensation act of 1911 took effect, and as the injury to the plaintiff in this case was received subsequent to that time, he could not lawfully have been nonsuited upon the theory that he was injured through an obvious risk which he assumed.

The views above expressed lead to a reversal of the judgment of the court below, and an award of a *venire de novo*.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Black, White, Heppenheimer, Williams, Taylor, JJ. 14.