[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 377 
The City of Jersey City appeals from the action of the Division of Tax Appeals in dismissing the City's petitions of appeal from the Hudson County Board of Taxation. Although the cases involve in the aggregate several million dollars, the contentions of the parties respecting the true value of the properties assessed have not been heard by any administrative tribunal, since the County Board, like the Tax Division, decided that it was without jurisdiction. The appeals relate to real estate taxes for the years 1943, 1944 and 1945. About April 1, 1943, the County Board, acting under the authority given it by R.S. 54:4-47 to "revise, correct and equalize the assessed value of all property," reduced the assessments that had been made by the Tax Assessor of Jersey City on 34,431 parcels of land, by the total sum of $95,816,335. The County Board, on its own initiative, had made a study of land values in Jersey City and had reached a front foot value for every block in the city and substituted this value for the value reached by the assessor, and so reduced the assessment on 80% of the parcels of land in the city. Asserting that the assessments made by its Tax Assessor were correct and that the revised assessments were too low, the city filed with the County Board as an appellate tribunal, its petitions of appeals, one for each of the 34,341 reductions, alleging that it felt "discriminated against for the reason that said assessment is below the true value of said property." On November 15, 1943, the County Board made an order dismissing all of the petitions of appeal on the ground that they were filed "without authority in law" and were "insufficient to confer jurisdiction upon this Board." *Page 379 22 N.J. Misc. 16. The city immediately appealed to the State Board of Tax Appeals.
The next year, 1944, the County Board, as a revisory body, made 34,574 reductions in the land assessments and the city accepting the reductions in 10,000 cases, took 24,514 appeals to the County Board. Again the County Board dismissed the appeals for lack of jurisdiction, and the city appealed to the Division of Tax Appeals, successor to the State Board of Taxation. On January 16, 1945, counsel for sundry taxpayers moved to dismiss the appeals taken in 1943 and 1944. The Division first denied the motion, then reconsidered, and on September 4, 1945, dismissed the appeals for lack of jurisdiction. 23 N.J. Misc. 311. Meanwhile, 1945 assessments had been made by the city assessor and had been reduced by the County Board. The city took but 12,000 appeals to the County Board from the reduced assessments for 1945 and when these appeals were dismissed by the County Board, it appealed to the Division of Tax Appeals in only 876 cases. The Division, on September 3, 1946, dismissed these appeals. 24 N.J. Misc. 315. The City Commission now decided to abandon in large part its contest against the assessment reductions for 1943 and 1944, and continued the litigation with respect only to the 876 parcels that were the subjects of the 1945 appeals. The former Supreme Court, for reasons stated by Justice Colie, allowed writs ofcertiorari to review the action of the Division of Tax Appeals relating to the 876 properties for each of the three tax years, and thus the matter is now before us. Jersey City v. Division ofTax Appeals, 134 N.J.L. 454 (1946).
The city asserts that it had a right to appeal to the County Board and that the County Board had jurisdiction of the appeals under either R.S. 54:3-11 or 3-21. Section 11 is taken from sections 5 and 9. Chapter 120, of the Laws of 1906, the statute that created county boards of taxation. Section 9, like the present section 11, gives these boards all the powers formerly exercised by certain predecessor authorities, including Commissioners of Appeal. The General Tax Act of 1903, to which the 1906 Act was a supplement, provided *Page 380 
that on complaint that "property specified has been assessed at too low a rate or omitted in the assessment," the Commissioners of Appeal, after notice and hearing, may correct the assessment.P.L. 1903, c. 208, § 28, p. 412. Section 28 remained effective at least until the adoption of the 1918 Tax Revision,P.L. 1918, c. 236. Until then, the County Boards, having the authority given by section 28 to the Commissioners of Appeal, could hear appeals from assessments alleged to be too low. But inN.Y. State Realty Terminal Co. v. Hudson County Board ofTaxation, 102 N.J.L. 314 (E. A. 1926), it was held that section 701 of the 1918 statute had superseded section 28 of the 1903 law in so far as the latter gave an appeal to a taxing district from assessments complained of as too low, and hence that the county boards could not entertain such an appeal under section 28, despite the inclusive language of section 9 of the 1906 statute.
We now come to the general statutory revision of 1937. Section 28 as revised may be found in R.S. 54:3-20, but the revisors, accepting the decision of our highest court, which we have cited, left out the words "assessed at too low a rate," so that the revised section, 54:3-20, authorizes action only when the petition shows "that property specified has been omitted in the assessment." Since the Revised Statutes were adopted "as all the public statute law of the State of New Jersey of a general nature," P.L. 1937, c. 188, therefore section 28 of the 1903 Act has been effectively repealed except to the extent that it has been re-enacted in section 20. Brower v. Franklin Tp.,119 N.J.L. 417 (Sup. Ct. 1938); Duke Power Co. v. SomersetCounty Board of Taxation, 125 N.J.L. 431 (E. A. 1940). It is true that section 11 of Chapter 3, Title 54, of the Revision, purports to give to the county boards all the powers formerly exercised by Commissioners of Appeal; but the repeal or failure to re-enact as part of the Revision so much of section 28 of the old statute as gave Commissioners of Appeal the power in question, so operated that section 11 does not confer that power on the county boards. *Page 381 
We find, however, that the jurisdiction to hear the appeals in question was conferred upon the county boards by R.S. 54:3-21. This allows "a taxing district which may feel discriminated against by the assessed valuation of property in the taxing district" to appeal to the county board. It was doubtless because the revisors considered that this grant of power included in its scope the jurisdiction given by section 28 of the Laws of 1903 over complaints by a taxing district that assessments were too low, that they omitted a like grant of jurisdiction from section 20 of the Revision. Section 21 is taken from section 701 of the Tax Act of 1918, the same section that was considered in N YState Realty Terminal Co. v. Hudson County Board of Taxation,supra. That decision turned upon the question whether section 701 governed an appeal by the taxing district based on a complaint that property was assessed too low. The Court of Errors and Appeals held that the section did govern, and that it gave jurisdiction to the County Board.
The respondents have built the major part of their argument in frank disregard of this precedent. They urge upon us that we too should disregard it inasmuch as "the correct interpretation of the law" was not called to the attention of the Court of Errors and Appeals, and so that tribunal fell into error. We cannot agree. But assuming that our highest court did err and that section 701, properly construed, did not confer the questioned jurisdiction, then section 701 did not supersede in part section 28 of the Laws of 1903 and the revisors, when drafting section 20 of Chapter 3, Title 54, ought not have omitted the words "assessed at too low a rate." The Legislature, in approving that section as a part of the Revision of 1937, accepted the New YorkState Realty case as sound law and we likewise accept it. From this it follows that the County Board had jurisdiction of the appeals of the City of Jersey City and should not have dismissed them unless some factors peculiar to this litigation justified the dismissal. We may add that the municipality's right of appeal was impliedly recognized in the adoption of P.L. 1942, *Page 382 c. 79, and is again restated in Hackensack Water Co. v.Division of Tax Appeals, 2 N.J. 157 (1949).
The Tax Appeals Division took the view that section 21 permits the taxing district to press appeals for the correction of "relatively few errors" in the assessments, but that it does not give a right to take "a mass appeal." We find nothing in the statute to justify such an interpretation. While the County Board or the State Board might naturally feel overwhelmed when confronted with thousands of appeals, whether filed by a single suitor or by many, that feeling could not nullify the right of appeal. We might add that a multitude of appeals is a normal result of a general revision of assessments, such as the County Board made.
We pass on to the next ground presented in support of the dismissal of the appeals. The tax rates for 1943, 1944 and 1945 were calculated by the County Board pursuant to R.S. 54:4-52, on the basis of the reduced assessments. If Jersey City had been allowed by the County Board to press its appeals, and had won out in all or the greater number of the appeals and collected the taxes based on the higher assessments, it would have taken in a sum several million dollars in excess of its budget for the year in which the money was received. This, say respondents, is contrary to the legislative intent and is a justification for the dismissal of the appeals. Certainly it is the statutory scheme that receipts including taxes should equal the outgo. But it is also a part of the statutory plan that a property owner who is overassessed shall, by appeal, have his assessment reduced and that a taxing district may have relief on appeal against underassessments. Such corrections can be made only after budget and tax rate have both been fixed, and each correction disturbs the balance in greater or less degree, as the error complained of is important or trifling. Surplus revenue has been anticipated by the Legislature; it may be carried into the budget and reduce the tax levy for the next year. R.S. 40:2-13 et seq. Cf.Pennsylvania Tunnel Terminal Co. v. Hendrickson, 87 N.J.L. 239
(E. A. 1915); In re City Affairs Committee of JerseyCity, 129 N.J.L. 589 (Brogan, *Page 383 C.J., 1943). The possibility that the appeals might result in unbalancing Jersey City's budget is not a good reason for denying the appeals.
The respondents argue that the action of the Collector of Jersey City, in sending out tax bills showing the revised, decreased assessments, operated as a waiver by the City of all objections it might have to the assessments. The argument deserves but scant attention. We note first that the Collector has no authority to waive the city's right of appeal; second, that the statute requires the tax bills to be mailed or delivered to the taxpayers severally by June 1 (R.S. 54:4-64), while the statute also allows the municipality until August 15th to appeal (R.S. 54:3-21). Thus is manifested the legislative intent that the mailing of the tax bills should not prejudice the appeal.
The respondents challenge the resolutions of the City Commission instructing the Director of Revenue and Finance to appeal, on the ground that the resolutions did not include a recital, or finding that the city felt discriminated against by the assessments complained of. The direction to appeal was sufficient without any expressed findings. The direction itself was evidence of the commission's finding that the municipality had suffered such injury as constituted in law reason to appeal, whether it be that the municipality felt "aggrieved" or "discriminated against."
The last point urged by the respondents as a group is this: The City's appeal to the Appellate Division relates to the assessments on only 876 parcels of land; by thus limiting its appeal, the city attempts to impose an unequal and unconstitutional burden upon the owners of the 876 parcels. The foundation of this contention is the assumption that the County Board did, in fact, under assess most land in Jersey City. If the Board reduced assessments generally to 75 per cent of true value, let us say, and now, as a result of these appeals, should increase the assessments on the 876 parcels to 100 per cent, the respondents would bear a disproportionately large share of the cost of government. But if the assessments as revised by the County Board average 100 per *Page 384 
cent of true value, then if the assessments on the respondents' lands be increased on the appeals to 100 per cent, the respondents will bear no more than their fair share of the tax burden.
There is no sufficient justification for respondents' assumption that property in Jersey City is generally underassessed. The statute requires that property be taxed at true value, not at 75 per cent thereof, or any fraction of true value. R.S. 54:4-1 and 23. Royal Mfg. Co. v. Board ofEqualization, 76 N.J.L. 402; affirmed, 78 Id. 337 (1909). The County Board of Taxation is specially directed to secure the taxation of all property in the county at its true value. R.S
54:3-13 and 17, and 54:4-47. In the absence of a contrary showing, we must presume that the assessments on all property in Jersey City, as revised by the County Tax Board, are correct and represent true value. N.J. Bell Tel. Co. v. City of Newark,118 N.J.L. 490 (Sup. Ct. 1937); Harborside Warehouse Co. v.Jersey City, 128 N.J.L. 263; affirmed, 129 Id. 62 (1942). This presumption applies to the parcels which were the subject of the appeals that the city took and later abandoned; it will apply to the 876 parcels which are still in litigation, when the appeals relating to those lots is tried. Of course, on the motion before the County Board to dismiss, all allegations in the petitions of appeal should have been accepted as true, including the assertions that the assessments were less than true value, but that rule is no more than a guide for testing the sufficiency of the petition of appeal; it does not disturb the general presumption that the action of the County Board accorded with the law.
Despite the presumption to the contrary, it may be that the average assessment in Jersey City is only a fraction of true value; that the undervaluation is intentional and systematic, and that to raise to true value the assessments on the respondents' lands would constitute an unconstitutional discrimination against respondents. Sioux City Bridge Co. v. Dakota County,260 U.S. 441; 43 S.Ct. 190 (1923); Hillsborough Tp., Somerset County,N.J., v. Cromwell, 326 U.S. 620, 66 S.Ct. 445 (1946). If so, respondents will have *Page 385 
the opportunity to prove the fact before one or other of the tax boards. Central R.R. Co. of New Jersey v. State Tax Dept.
(Thayer-Martin), 112 N.J.L. 5 (E. A. 1933).
As a branch of this same line of attack, respondents assert that the city's abandonment of the contest, except with regard to the 876 lots, was in itself an unlawful discrimination against respondents and bars the city from continuing any of the appeals. Whether the city should appeal in the first place from the assessment on any particular plot, and, having appealed, the question how far it should continue the contest, would seem to be matters peculiarly within the discretion of the city authorities. In this respect, is not the city in the same position as any other litigant? But this question is the subject of another cause now pending before us on certioraris obtained by taxpayers to review the resolutions of the City Commission which authorized the appeals that we have been dealing with. We will defer until the argument of that cause a more thorough consideration of the alleged discrimination by the city.
Several of the respondents argue that the statute as we have construed it, denies to the taxpayers due process because it does not require that notice of the city's appeal to the County Board be given to the taxpayer whose property is the subject of the appeal. If the giving of notice were a matter of grace or were left to the discretion of the city or of the Tax Board, this contention would probably be correct. Coe v. Armour FertilizerWorks, 237 U.S. 413; 35 S.Ct. 625 (1915); Wuchter v.Pizzutti, 276 U.S. 13; 48 S.Ct. 259 (1928). But our law does require a hearing on notice to the taxpayer. R.S. 54:3-22 expressly requires the hearing. The requirement for notice is imported into the statute by judicial intendment. Wilson v.Karle, 42 N.J.L. 612 (E. A. 1880); Davis v. Howell,47 N.J.L. 280 (Sup. Ct. 1885); Township of Kearney v.Ballantine, 54 N.J.L. 194 (E. A. 1891). The respondents point out that section 21 expressly requires notice to any interested taxing district, but is silent as to notice to taxpayers. The maxim expressio unius exclusio alterius should not be applied where, as in *Page 386 
this case, the resulting interpretation might make the statute unconstitutional. O'Banner v. Pendelbury, 107 N.J.L. 245 (E. A. 1931). Notice to the taxpayers is required by our law and is not dependent upon discretion.
Some respondents that received timely notice by mail of the appeals to the County Board, argue that notice by mail was insufficient. We hold to the contrary. Brost v. Whitall-TatumCo., 89 N.J.L. 531 (E. A. 1916); McKenna v. HarringtonCo., 96 N.J. Eq. 700 (E. A. 1924); Ruhle v. Caffrey,115 N.J.L. 517 (E. A. 1935).
The judgments of the Division of Tax Appeals are reversed with directions to reinstate the appellant's appeals from the County Board of Taxation.