185 N.J. Super. 343 (1982)
448 A.2d 526
CLINTON TOWNSHIP CITIZEN'S COMMITTEE, INC., A NONPROFIT CORPORATION OF NEW JERSEY, WILLIAM LASCELLE, PHYLLIS DRAUTMAN, PAUL VERSARGE, JAMES RASCOVAR, II, JOHN MATSEN, HANS DAHME, ELIZABETH NELSON, WILLIAM ELY, PAUL MORIARATY, MARYLOU CARHART, CHARLES W. QUINLAN, JOHN H. CLAUS, S. MONDA, CAROL MESSINGER, CHARLES ANDERSON, GLORIA LAZOR, CAROL GOLDSMITH, ARCHIE MAGLIOCHETTI, MARGARET HAMILTON, LYNN REED, PLAINTIFFS, AND ASSOCIATION OF MUNICIPAL ASSESSORS OF NEW JERSEY, PLAINTIFF-INTERVENOR,
v.
MAYOR AND COUNCIL OF THE TOWNSHIP OF CLINTON AND VINCENT J. MAGUIRE, DEFENDANTS, AND IRWIN I. KIMMELMAN, ATTORNEY GENERAL OF NEW JERSEY, DEFENDANT-INTERVENOR.
Superior Court of New Jersey, Law Division Hunterdon County.
Decided March 23, 1982.
*344 Robert De Chellis for plaintiff.
Alexander F. Keating for defendant Mayor and Council of the Township of Clinton (Winget, Keating, Thatcher & Lanza, attorneys).
Edward G. Rosenblum for defendant cross-claimant Vincent J. Maguire and plaintiff-intervenor Association of Municipal Assessors of New Jersey (Rosenblum & Rosenblum, attorneys).
Harry Haushalter for defendant-intervenor Irwin I. Kimmelman, Attorney General of New Jersey.
CONLEY, J.T.C. (temporarily assigned).
This litigation was instituted by an organization of taxpayers who challenge the right of their municipal governing body to withdraw, without the consent of the local tax assessor, certain complaints filed in the Tax Court by the municipality. The *345 municipal assessor is a named defendant but has filed a cross-claim against the taxing district in which he also challenges the announced intention of the governing body to withdraw its appeals against his advice. The Association of Municipal Assessors of New Jersey was permitted to intervene as a plaintiff because the primary issue raised by the parties affects the role of assessors in all 567 taxing districts in the State. The Attorney General was permitted to intervene for the limited purpose of defending the constitutionality and validity of the statutory scheme establishing the existing tax appeal procedure.
The facts essential to a resolution of this matter are not in dispute and plaintiffs have filed a motion for summary judgment. The motion was heard on short notice with the consent of all parties. At the close of oral argument on the motion the court granted plaintiffs' application for a preliminary injunction restraining defendant township from withdrawing any pending complaints in the Tax Court without the consent of the assessor until the further order of this court.
The present matter has its origin in a revaluation of all real property in the township that was effective for the tax year 1980. Many taxpayers appealed their new assessments to the Hunterdon County Board of Taxation, which granted a considerable number of reductions. Plaintiffs allege that many other taxpayers with similar dissatisfaction over their new assessments did not appeal to the county board and thus received no reductions in their assessments. On February 5, 1981 the Clinton Township Council adopted Resolution 22-81 authorizing the township attorney to file complaints with the Tax Court seeking a restoration of the original assessments established by the revaluation. The township attorney filed approximately 190 complaints with the Tax Court pursuant to Resolution 22-81. In due course, the township's complaints were scheduled for trial in the Tax Court. As the first 30 or 40 matters were reached, one was tried to judgment and the remainder settled. In each instance the assessment resulting from the Tax Court proceeding *346 was higher than the assessment that had been determined by the county tax board.
The revaluation and ensuing litigation caused a considerable amount of turmoil within the municipality. Some taxpayers, particularly those whose assessments had been reduced by the county tax board, were upset that the governing body had authorized appeals to the Tax Court seeking to have the original assessments reinstated. These homeowners and presumably other dissatisfied citizens expressed their concern in the political arena. At the township election in November 1981 two individuals were elected to the township council who had run as a team on a platform stating that the municipality's tax appeals should not be pursued. One of these new members was elected mayor. The other new member represented to the court that she is convinced the new members were given a mandate by the voters to terminate the pending tax litigation.
On January 21, 1982, at or about the time that the first 30 or 40 cases had been or were being reduced to judgment by the Tax Court, the township council adopted a motion made by the new mayor directing the tax assessor to inform defendants in the remainder of the tax cases that the township would settle the cases at the assessments determined by the county board. Obviously, the effect of this motion would have been to withdraw the complaints filed by the township, leaving the reduced assessments intact. The mayor and one other council member who voted for the motion were defendants in pending tax appeals. The tax assessor asked to be heard on the motion and was advised by the mayor that he could not be heard. It is undisputed that the assessor has taken a consistent position that the township should prosecute its tax appeals in an effort to have the original assessments restored. The assessor then asked whether he should see the former municipal attorney or the newly-appointed municipal attorney for an interpretation of council's motion regarding tax appeals. The new mayor replied that the assessor should see the mayor directly on this subject. *347 On January 25, 1982 the mayor wrote the following letter to the assessor reminding him of the council's resolution:
As Mayor, I am advising you to take immediate action in this matter, contacting those taxpayers whose cases are being heard first on February 23rd, followed by those being heard on dates thereafter until all are contacted.
I am also advising you to attend the Council agenda meeting on February 3rd prepared with a complete list of results.
On February 4, 1982, subsequent to the filing of the present complaint and the issuance of a temporary restraining order preventing the township from taking action pursuant to its motion, the township council rescinded the motion and adopted Resolution 15-82. This resolution appointed new counsel for the township's tax litigation and directed him to attempt to "dispose of such appeals" at the reduced assessment made by the county board. This resolution differed from the council's prior motion in two respects: it directed the township's special tax attorney (rather than the tax assessor) to take action, and it excepted from its coverage the appeals involving the mayor and the other council member who had voted for the January 21, 1982 motion. However, the new resolution also directed the new tax attorney to advise the township council "whether it would be proper" for him to represent the township in attempting to dispose of the appeals of the mayor and the other council member. The new resolution was executed by the mayor on behalf of the council.
Plaintiff taxpayers in the present action contend that the municipal governing body has no authority "to interfere with the process of assessment" and that the resolution directing the township's new attorney to settle the tax appeals was therefore ultra vires. They also contend that withdrawal of the pending tax appeals would result in a lack of uniformity among the assessments in the township because some assessments would be as determined by the revaluation and some would be as reduced by the county tax board. Their complaint contains two counts. One count seeks relief in lieu of prerogative writs in the form of a permanent injunction to restrain the township's mayor and council from interfering with the tax assessor in the performance of his legal duties. The second count seeks a declaratory *348 judgment providing that only the tax assessor and not the municipal governing body has the authority to control the tax appeal process on behalf of the municipality, particularly with regard to the settlement and withdrawal of tax cases.[1] Defendant tax assessor's cross-claim seeks a declaratory judgment defining the statutory role of the assessor in connection with tax litigation and declaring that the municipal governing body has no statutory power and authority to direct an assessor to dispose of such litigation upon terms and conditions which the assessor considers in his judgment to be contrary to law or unjust.
The preliminary injunction issued by this court on the return date of its order to show cause has maintained the status quo of the township's tax appeals while the court has prepared this opinion. The relationship between the roles of municipal governing bodies and tax assessors in the context of local property tax matters has been a matter of some uncertainty in recent years and it is a subject that warrants a rather extensive discussion in this case because it has such general application.
The first issue that needs to be resolved is whether the local governing body or the local tax assessor has the authority to initiate, prosecute, settle and withdraw from tax litigation on behalf of a municipality. The basic statute which permits a municipality in the first instance to appeal an assessed valuation of property within its district is N.J.S.A. 54:3-21, which states in pertinent part:
... a taxing district which may feel discriminated against by the assessed valuation of property in the taxing district, or by the assessed valuation of property in another taxing district in the county, may on or before August 15 appeal to the county board of taxation by filing with it a petition of appeal; *349 provided, however, that any such ... taxing district may on or before August 15 file a petition of appeal directly with the tax court, if the assessed valuation of the property subject to the appeal exceeds $750,000....
This statute, as it pertains to appeals by taxing districts, was construed in a group of cases dealing with appeals taken by Jersey City from assessments made in 1943, 1944 and 1945. Jersey City v. Bettcher, 22 N.J. Misc. 16 (Hudson Cty. Bd. of Tax. 1943), aff'd sub nom. In re Jersey City, 23 N.J. Misc. 311 (Div. of Tax App. 1945), and In re Jersey City, 24 N.J. Misc. 315 (Div. of Tax App. 1946), aff'd sub nom. Jersey City v. Tax Appeals Div., 5 N.J. Super. 375 (App.Div. 1949), aff'd o.b. 5 N.J. 433 (1950). In those cases the Hudson County Board of Taxation had reduced numerous assessments made by the tax assessor of Jersey City. As a result, the Commissioners of Jersey City adopted a resolution directing the Director of Revenue and Finance
... to take such appeals from assessments or actions of the Hudson County Board of Taxation, which effected reductions in valuations of real or personal property in the City of Jersey City for the year 1943. [22 N.J. Misc. at 19]
A similar resolution was adopted for 1944. For 1945 the following text was adopted:
Resolved, that the Director of Revenue and Finance or his deputy be and they hereby are authorized to execute petitions of appeal by the City of Jersey City to the Hudson County Board of Taxation in all cases where the assessment, as certified by the Hudson County Board of Taxation for the year 1945, does not reflect the true value of the property assessed, and they are further authorized to do and take any or all other action or actions that may be required to prosecute the same to final determination. [24 N.J. Misc. at 318]
Pursuant to these resolutions Jersey City filed with the county board 34,431 appeals for 1943, 24,514 appeals for 1944 and 12,000 appeals for 1945. Certain taxpayers moved to dismiss on the grounds that the appeals were not sufficient on their face to confer jurisdiction on the county board.
In published opinions the Hudson County Board of Taxation and the Division of Tax Appeals held that the city's resolutions were inadequate to permit the city to prosecute its appeals. The Division stated that:
... in order for Jersey City to appeal any assessment, the Board of Commissioners of Jersey City must first determine, by the exercise of reasonable discretion, that the taxing district of Jersey City feels discriminated against by reason of *350 certain property assessments, and then order appeals to be taken from those particular assessments. These necessary steps in the procedure leading to an appeal by Jersey City to the Hudson County Board of Taxation cannot be delegated to subordinate city officials. [24 N.J. Misc. at 324]
The Division went on to hold:
It does not appear that the Board of Commissioners of Jersey City adopted any resolution declaring that the city felt discriminated against. It does not appear that the Board of Commissioners of Jersey City ordered any assessments appealed to the Hudson County Board of Taxation because the city felt discriminated against. It appears that the Board of Commissioners of Jersey City authorized appeals of assessments only because they did not reflect the true value of the property assessed, but the resolution does not mention any specific assessment from which an appeal was to be filed. From the record before us, it is obvious that the City of Jersey City did not follow the procedure necessary to file any of the 12,000 appeals with the Hudson County Board of Taxation. [Id. at 325]
The Division of Tax Appeals thus concluded not only that a taxing district was required to adopt a resolution authorizing appeals from an assessment but also that the resolution had to be very specific as to allegations of discrimination. Jersey City appealed to the Appellate Division of the Superior Court with regard to the 1945 assessments. The Appellate Division reversed, but in doing so it did not overrule the holding that a taxing district must adopt a resolution authorizing an appeal from an assessment. Rather, it rejected only the holding that the resolution had to indicate specifically a feeling of discrimination:
The respondents challenge the resolutions of the City Commission instructing the Director of Revenue and Finance to appeal, on the ground that the resolutions did not include a recital, or finding that the city felt discriminated against by the assessments complained of. The direction to appeal was sufficient without any expressed findings. The direction itself was evidence of the commission's finding that the municipality had suffered such injury as constituted in law reason to appeal, whether it be that the municipality felt "aggrieved" or "discriminated against." [5 N.J. Super. at 383]
The Appellate Division thus took a more expansive view than did the Division of Tax Appeals as to the means by which a taxing district must appeal from assessments  the governing body of a taxing district must adopt a resolution authorizing an appeal but the resolution may be worded in general terms. In fact, one resolution, if properly worded, could authorize numerous *351 appeals. The three resolutions passed by the City Commission of Jersey City authorized thousands of appeals merely by directing municipal officers to appeal any reductions in valuations or any assessments below true value. The Appellate Division apparently found nothing wrong with that procedure since it did not specifically address the issue.
Other cases support the view that a resolution by the governing body must precede and authorize an appeal from an assessment. These cases for the most part deal with actions in general taken by a municipal body. For example, in Woodhull v. Manahan, 85 N.J. Super. 157 (App.Div. 1964), aff'd 43 N.J. 445 (1964), a case which is often cited on this point, the Appellate Division considered a situation in which several town councilmen of Morristown, in order to prevent appointment of a certain party as town attorney, attempted to characterize the appointment as being done by "motion." Although the mayor by statute had veto power over ordinances and resolutions passed by the town council (N.J.S.A. 40:133-1 et seq.), the councilmen contended that that power did not extend to motions. The court found that a municipal governing body may act only by ordinance or resolution and that no substantial difference exists between a motion and a resolution, citing Dey v. Jersey City, 19 N.J. Eq. 412 (Ch. 1869); Pierson v. Dover, 61 N.J.L. 404 (Sup.Ct. 1898); Keyport Sewerage Auth. v. Granata, 52 N.J. Super. 76 (Law Div. 1958); Irvington v. Ollemar, 128 N.J. Eq. 402 (Ch. 1940), aff'd sub nom. Irvington Nat'l Bank v. Geiger, 131 N.J. Eq. 189 (E. & A. 1942). Thus, the town council could not avoid the mayor's veto power by attempting to characterize a resolution as a motion. See, also, Woodsum v. Pemberton Tp., 172 N.J. Super. 489 (Law Div. 1980) (informal promise by township committee to investigate and correct water problem held to be unenforceable because it did not amount to a resolution or ordinance).
The authority for a municipality to institute litigation is set forth in N.J.S.A. 40:43-1, which provides:

*352 The inhabitants of every municipality shall be a body corporate in fact and in law, and by its corporate name it shall have perpetual succession, may sue and be sued, have a common seal, and purchase, acquire, lease, hold, let and convey real and personal property for the use and benefit of the municipality.
The governing body of a municipality, as defined in N.J.S.A. 40:42-2 and N.J.S.A. 40:42-3, is vested with general legislative power to act on behalf of the municipality. It has the specific power to manage, regulate and control the finances and property of the municipality. N.J.S.A. 40:48-1. It is therefore apparent that the governing body has exclusive power to act in the name of the municipality except where the duties of certain officers are fixed by statute. Thus, when a statute grants power to a municipality as a corporate body it implies that the governing body will exclusively administer that power unless otherwise indicated by the Legislature. See 3 McQuillin, Municipal Corporations (rev. 3 ed. 1979), § 12.74 at 325; Riddlestorffer v. Rahway, 82 N.J. Super. 36, 53 (Law Div. 1963).
With regard to N.J.S.A. 54:3-21, taxing districts are given the power to appeal certain assessments. See, also, N.J.S.A. 54:2-39. This implies that the governing body of the taxing district must authorize suit. No statute specifically grants to tax assessors or other officers the power to bring suit on behalf of the taxing district without authorization of the governing body. Since the governing body must act by ordinance or by resolution, every suit brought in the name of the taxing district must be authorized by resolution, although, as stated above, the resolution can be made in the most general terms. It necessarily follows that the authority to withdraw or settle litigation also lies in the governing body and not, as suggested by plaintiffs, in the tax assessor. Of course, actions taken in the context of litigation by a municipal tax assessor or by a municipal attorney may be ratified subsequently by the governing body in appropriate circumstances. Houman v. Pompton Lakes, 155 N.J. Super. 129 (Law Div. 1977). Nonetheless, for good reason, the elected representatives of a taxing district who constitute its governing body have the ultimate legal authority over the control of litigation.
*353 Although as a matter of law a taxing district acts by resolution of its governing body in initiating and participating in litigation in the Tax Court, including the withdrawal of its own complaints and the settlement of any matter, it is clear that the resolution of the township council involved in this case was opposed by the township's tax assessor and was adopted in highly-charged political and partisan circumstances. Since the court is aware of this by virtue of the present complaint, the court must decide whether to attach any legal significance to these last-mentioned factors.
It cannot be ignored, and indeed it should be emphasized, that tax assessors in this State have achieved a high degree of professional accomplishment with regard to local property tax assessment and administration. The Legislature adopted a comprehensive examination and certification program in 1967 to insure that municipal tax assessors are qualified to deal with the technical and important subject of property tax assessment. N.J.S.A. 54:1-35.25 et seq. See N.J.A.C. 18:17-1.1 et seq. Cf. Alongi v. Schatzman, 57 N.J. 564 (1971). The Legislature has provided very clearly that it is the initial and primary responsibility of the assessor to determine property tax assessments. N.J.S.A. 54:4-23, 4-24, 4-27 and 4-35. In performing his assessment duties the municipal tax assessor acts under the supervision and control of his county board of taxation and the Director of the Division of Taxation. N.J.S.A. 54:3-16; N.J.S.A. 54:1-27 and 54:1-35.31. (The Legislature has also recently raised the professional requirements for members of county boards of taxation and for county tax administrators. N.J.S.A. 54:3-2 and 3-7). It is a statutory requirement that assessors and county tax boards must be notified of complaints filed and judgments entered in the Tax Court involving assessments within their jurisdictions. N.J.S.A. 54:2-40. Finally, the Legislature has insured a certain degree of independence and job security for assessors because of the need to insulate them from local political pressures. See N.J.S.A. 40A:9-151 and 9-165; L. 1981, c. 393.
*354 The courts have also been protective of the integrity of the role of the tax assessor. In Arace v. Irvington, 75 N.J. Super. 258 (Law Div. 1962), an assessor was faced with an effort by the municipality to investigate his practices, in particular his method of assessing property, after a great number of taxpayers had complained about their individual assessments. In holding that the municipality had no right to examine the assessor as to his assessment practices, the court said:
It is the judgment of the municipal assessor which the Legislature has determined to be the method for determining the true value of the property within a single taxing district. In exercising said judgment, the assessor is exercising a quasi-judicial authority as an agent of the Legislature, subject to the control and supervision of the county boards of taxation and the Director of the Division of Taxation in the manner provided by statute.
The assessor, in his relation to the municipality, is in much the same position as a magistrate. See Kagan v. Caroselli, 30 N.J. 371 (1959), wherein the court stated that "the power [of the municipality] to appoint did not make the functions of a magistrate a phase of local government. Rather, in exercising the appointive power, the governing body acts merely as a statutory agent." In determining property values, assessors, like judges, should perform their duties without fear or favor. Their quasi-judicial duties should be exercised free of pressure and harassment. To insure this protection, they should not be called upon to explain or justify their methods of calculating assessments. Those who feel aggrieved or discriminated against as a result of local assessments are provided with a statutory method of appeal by which their grievances will be heard and determined. [at 269]
See, also, Pleasantville Taxpayers v. Pleasantville, 111 N.J. Super. 377 (Law Div. 1970), aff'd 115 N.J. Super. 85 (App.Div. 1971), certif. den. 59 N.J. 268 (1971) (holding a tax assessor immune from direct attack in a revaluation context), and Ridgefield Park v. Bergen Cty. Bd. of Tax., 61 N.J. Super. 170 (Law Div. 1960), rev'd on other grds. 33 N.J. 262 (1960).
Two other decisions are noteworthy. In Ream v. Kuhlman, 112 N.J. Super. 175 (App.Div. 1970), certif. den. 59 N.J. 267 (1971), taxpayers brought suit for a declaration that the tax assessor, who had been elected under the township committee type of government, would be the duly appointed assessor following the adoption by the town of the council-manager plan of government and the purported appointment by the town council of a board of tax assessors. The court held that with the council-manager *355 form of government the appointive power over a tax assessor or members of a board of assessors is vested in the municipal manager. The court further held that the assessor was effectively appointed township tax assessor following the adoption of the new form of government, and that irrespective of efforts on the part of the town to limit the duration of his term, the statutory term of four years governed. In discussing the statutory term of the assessor, the court said:
The reasons for insulating a tax assessor with a fixed term of office are manifold. His office, an integral part of our state, county and municipal governments, is chargeable with the administration of a statutory system relating to the levy, assessment and collection of property taxes. He is an agent of the Legislature, and his discretionary judgment is reviewable only through the administrative and judicial processes provided by law. Although his jurisdiction is local, his powers and duties are prescribed by the Legislature, and it is of paramount importance that the integrity of his office be in no way diluted by local interference. [112 N.J. Super. at 190]
In Horner v. Ocean Tp., 175 N.J. Super. 533 (App.Div. 1980), an assessor challenged the right of the township to fix his hours of work. He alleged that defendants were harassing him and interfering with his duties as tax assessor. The Appellate Division held that the municipality had the power to pass reasonable ordinances regulating the hours of the assessor in furtherance of its power to appoint assessors and to control municipal property. The court further held that the municipality's power to regulate the hours of the tax assessor was not preempted by state law. However, in so holding, the court observed that under the total statutory plan pertaining to tax assessors, the assessor is an agent of the Legislature and municipalities have a "limited role" with respect to assessors and their duties.
In recognition of the crucial role of the assessor in the field of property tax assessment and administration, the Tax Court has adopted a procedure in connection with the settlement of litigation in that court which requires the direct involvement of the assessor. R. 8:9-5 provides that "[j]udgment in a local property tax matter may be entered upon stipulation of the parties supported by such proof as the Court may require." In keeping *356 with this rule, the court requires the parties who have settled their case to execute one of two types of stipulation of settlement form. In each such form, the following language appears:
The assessor of the taxing district has been consulted by the attorney for the taxing district with respect to this settlement and has concurred.
The agreement of the assessor to any such settlement helps to assure the court that the settlement was arrived at on the merits and that the resulting assessment will be at the fair assessable value of the subject property consistent with assessing practices generally applicable in the taxing district as required by law. See South Plainfield v. Kentile Floors, Inc., 183 N.J. Super. 359, 4 N.J. Tax 1 (App.Div. 1982).
In the present case the governing body of defendant township, by adopting Resolution 15-82, authorized the withdrawal of its complaints in the Tax Court rather than the settlement of its litigation. A withdrawal would leave the reduced assessments in effect whereas a settlement could result in an increase in the assessments above the figures determined by the county board judgments. Defendant's assessor wants to litigate and perhaps to settle these matters. However, the Tax Court has no procedure that requires the consent of an assessor to a withdrawal of a complaint filed by his municipality. Defendant township relies upon R. 8:3-9 and Cherry Hill Tp. v. U.S. Life Ins. Co. of N.Y., 176 N.J. Super. 254, 1 N.J. Tax 236 (Tax Ct. 1980), in support of its argument that it may unilaterally withdraw its complaints since the governing body has authorized this course of action by resolution. R. 8:3-9 provides as follows:
Whether or not a responsive pleading has been filed, a complaint or a counterclaim may be withdrawn at any time prior to the close of proofs before the Tax Court and thereafter with leave of Court.
This rule was construed by the Tax Court in Cherry Hill Tp., supra. In that case the taxpayer had appealed to the county board to obtain a reduction on the assessment of the taxpayer's two apartment buildings. The county board reduced the assessment and the township appealed to the Division of Tax Appeals *357 (now the Tax Court). The taxpayer did not file a cross-appeal or counterclaim. The matter was subsequently transferred to the Tax Court and at the pretrial conference the township attorney advised the court that the township was withdrawing its appeal. The taxpayer's attorney objected and filed a motion for an order denying the township's application to dismiss its appeal or, alternatively, permitting the taxpayer to file a cross appeal. The Tax Court held that there was no authority to prevent the township from withdrawing its appeal and in addition the taxpayer was not entitled to file a cross-appeal out of time. The court relied largely upon R. 8:3-9, noting that:
In short, there is no authority to prevent plaintiff from withdrawing its appeal as requested in this case. Indeed, R. 8:3-9 permits such a withdrawal. The practice in the Tax Court in this respect is different from practice in the Superior Court. Dismissal of an action resulting from a plaintiff's timely withdrawal of its complaint is not upon terms and conditions set by the court. In the case of such a withdrawal, entry of the judgment of dismissal is a ministerial act carried out by the Clerk of the Tax Court. Any party seeking affirmative relief in this court must protect his rights by the filing of an appropriate pleading. He cannot rely upon the filing of a pleading by his adversary. Defendant's motion for an order preventing plaintiff's withdrawal of its appeal is denied. [176 N.J. Super. at 261-262, 1 N.J. Tax at 243]
The rationale of the court in the Cherry Hill case is not applicable to the facts in the pending matter and defendant township's reliance on that case is not warranted. The Cherry Hill opinion dealt with the need for an adversary party to protect its interests by the filing of an appropriate pleading. Defendant in that matter had not filed such a pleading and the withdrawal by plaintiff of the only pleading ever filed put defendant out of court. The person objecting to a withdrawal of the pending complaints involved in this proceeding had no occasion to file his own pleading in the Tax Court because his governing body had done so; he correctly thought that his interests were thereby protected. The difficulty here is deciding who represents the interests of defendant municipality. We have held that the governing body has the legal authority to withdraw complaints it filed in the Tax Court, yet we have at *358 the same time set forth the crucial role of the tax assessor in maintaining the integrity of the assessment system.
The facts of this case call for an exercise by this court of its inherent equitable powers. We note that the Tax Court also has equitable powers and we are confident it will invoke them in situations similar to these. N.J.S.A. 2A:3A-4 a. The undisputed facts adduced in this action reflect a disturbing insensitivity on the part of defendant's governing body to the integrity of the tax assessment system. The politicized atmosphere in which the municipality's assessments have been debated is unhealthy. The governing body's refusal to permit public discussion by defendant's assessor of the January 21, 1982 motion directing him to settle cases at reduced assessments is indicative of a disregard for the merits of the municipality's assessments and of the assessor's professional qualifications. The mayor's subsequent letter to the assessor viewed in its best light is discourteous and presumptuous. The vote by the mayor and another council member to drop municipal litigation that could have an adverse financial impact on them cannot be viewed in a favorable light and is in all respects inappropriate and ill-conceived.
This court will grant plaintiffs' motion for a permanent injunction to prevent defendant township council from withdrawing its complaints now pending in the Tax Court without the consent of defendant's tax assessor. This judgment will have the effect of putting any withdrawals on the same terms and conditions as the Tax Court now puts stipulations of settlement. If defendant council is unable to obtain the consent of its assessor to any such withdrawals, it should apply to the Tax Court judge assigned to hear the individual cases for his approval of the withdrawals.
This disposition of the case renders it unnecessary for the court to discuss plaintiffs' contention that the withdrawal of pending litigation in the Tax Court would result in a lack of uniformity among the assessments in the township.
NOTES
[1] The two forms of relief sought by plaintiffs involve essentially the same legal issue. The court will treat this as an action in lieu of prerogative writs pursuant to R. 4:69-1 et seq. because declaratory judgment actions pursuant to N.J.S.A. 2A:16-50 et seq. are not preferred when a traditional remedy is available. Cf. Registrar & Transfer Co. v. Taxation Div. Director, 157 N.J. Super. 532 (Ch.Div. 1978), rev'd on other grds. 166 N.J. Super. 75 (App.Div. 1979), certif. den. 81 N.J. 63 (1979).