LARIO, J. T. C.
Pleasantville appeals to this court from a judgment entered by the Atlantic County Board of Taxation reducing defendant’s 1981 local real property tax assessment. Defendant moves to dismiss plaintiff’s appeal as having been filed out of time.
Pleasantville put into effect a district-wide tax assessment revaluation program for the tax year 1981. As a result taxpayers filed approximately 494 property tax appeals with the county board. As of early November 1981 a substantial number of these appeals had been decided and notices of judgments forwarded to the city.
In the opinion of the township tax assessor the judgments received indicated a trend toward a substantial reduction of many of the assessments. He notified the mayor about the judgments and called the mayor’s attention to this trend. Ultimately, the county board issued judgments reducing 292 assessments. The assessor alleged concerning these 292 appeals that the board had reduced the assessments indiscriminately; had granted reductions amounting to at least 25% of the assessed value of the majority of the properties and that these reductions constituted an “inflated percentage.” He therefore recommended that appeals be filed by the township in these 292 cases.
The above allegations were made known to city council. The assessor alleges that he was not permitted to take any action regarding the appeals until such time as authorization to do so was given by council.
At the first “work session” of council held after the assessor’s notice and recommendation had been received, a structure vote was taken and the members agreed to consider and approve at its next regular meeting a resolution authorizing the 292 appeals. The council is composed of seven members. At the regular meeting held on November 16, 1981 with one member absent, the resolution authorizing the appeals was defeated. It was brought to the attention of the mayor that three of the councilmen who had voted “no” on the resolution in question owned property on which assessments had been reduced by the *522 county board. These reduced assessments were among those that the assessor had requested authority to appeal.
The mayor requested that the three interested council members reconsider their previous vote on the resolution by reason of their alleged conflict. The councilmen refused to reconsider. The mayor retained independent counsel and filed a complaint in the Law Division of the Superior Court for an order declaring the vote and resolution invalid due to the conflict of interest of the three council members. The matter was heard by Judge Weinstein who, on December 7,1981, in an oral opinion ordered that:
1. The vote on the resolution was void and set aside in its entirety and
2. Should the resolution be reconsidered by the city council, the three council members with a conflict would be disqualified from voting or participating in the debate on the issue.
Although Judge Weinstein’s order was not executed until December 11, 1981, on the evening of December 7, 1981 the city council held a formal meeting at which, with the disqualified members abstaining, the resolution authorizing the assessor to file the 292 appeals to this court was adopted. Immediately thereafter the tax assessor began processing the appeals.
The instant appeal was executed and mailed to this court on December 31, 1981 and it was received and marked filed by the clerk of this court on January 4,1982. Defendant taxpayer filed an answer and counterclaim and it brought the present motion to dismiss.
A municipality’s right to review of a county board judgment is granted by N.J.S.A. 54:2-39, which permits filing of a complaint with this court “pursuant to rules of court within 45 days of the service of the judgment of the county board....” R. 8:4-l(a)(2) also sets forth the 45-day time limitation, which has been strictly construed by our courts. See Newark v. Fischer, 3 N.J. 488, 492, 493, 70 A.2d 733 (1950); Prospect Hill Apt’s v. Flemington, 172 N.J.Super. 245, 1 N.J.Tax 224, 227, 228, 411 A.2d 737 (Tax Ct.1979).
*523 The 45-day time limitation begins to run from the date the county board’s judgment is served upon the party filing the appeal. Evesham v. Nye, 3 N.J.Tax 183, 186 (Tax Ct.1981). No direct proof was submitted as to when the county board’s judgment was mailed or received by the municipality. Defendant’s counsel, however, filed an affidavit stating that when a copy of plaintiff’s complaint was served upon her, she doubted the timeliness thereof. Consequently, she contacted the municipality’s tax assessor, who advised her that the city received its copy of the board’s judgment on November 9, 1981. Although the assessor filed both an answering and supplemental affidavit, this factual contention was not disputed. Therefore, for the purposes of this motion, this factual allegation is deemed admitted; hence, the statutory time limit governing appeals from the county board’s judgment began to run on November 9, 1981.
Defendant states that the municipality has failed to establish any justification or excusable neglect for not filing its appeal until January 4, 1982. It alleges that the statutory time period prescribed by N.J.S.A. 54:2-39, supra, may not be relaxed and that this court must dismiss the complaint even if it is only one day late, citing Prospect Hill Apt’s, supra.
Under N.J.S.A. 54:2-39, “Any party who is dissatisfied with the judgment of the county board of taxation upon his appeal may seek review of that judgment in the Tax Court....” (Emphasis added). The parties in the petition of appeal before the county board in this matter were defendant as appellant and Pleasantville as respondent. See, generally, Kurtz v. Burlington Cty. Bd. of Taxation, 4 N.J.Tax 343 (Tax Ct.1982). Since the city was dissatisfied with the judgment, it had the right to file an appeal.
Although initially an assessor has a statutory duty to ascertain and place the original assessment on all real property within his district (N.J.S.A. 54:4-23, 4-24, 4-27 and 4-35), under N.J.S.A. 54:2-39, the assessor has not been given the right to file an appeal on his own from the county board’s judgment. The proper appellant is a “party” to the county board action. *524 The proper appellant, therefore, is the municipality. Where a statute is silent as to how delegated powers are to be exercised by a municipality, they may be exercised either by resolution or ordinance. Howard v. Paterson, 6 N.J. 373, 377, 78 A.2d 893 (1951); Fraser v. Teaneck, 1 N.J. 503, 64 A.2d 345 (1949).
A municipality is permitted to prosecute an appeal from an assessment, but it must do so by a resolution adopted by its governing body. Jersey City v. Tax Appeals Div., 5 N.J.Super. 375, 383, 69 A.2d 331 (App.Div.1979), affd o. b. 5 N.J. 433, 75 A. 2d 865 (1950).
The issue of whether a local tax assessor or the local governing body has the authority to initiate, prosecute, settle and withdraw tax litigation on behalf of a municipality is fully discussed in Clinton Tp. Citizens’ Comm. v. Clinton Tp., 185 N.J.Super. 343, 448 A.2d 526 (Law Div. 1982), wherein the court said:
With regard to N.J.S.A. 54:3-21, taxing districts are given the power to appeal certain assessments. See also N.J.S.A. 54:2-39. This implies that the governing body of the taxing district must authorize suit. No statute specifically grants to tax assessors or other officers the power to bring suit on behalf of the taxing district without authorization of the governing body. Since the governing body must act by ordinance or by resolution, every suit brought in the name of the taxing district must be authorized by resolution, although, as stated above, the resolution can be made in the most general terms, [at-, 448 A.2d 526]
Accordingly, it was necessary for the assessor to secure authority from the city’s governing body to file the appeals. This he did, whereupon his recommendation was discussed and approved at the council’s work session. At the regular council meeting of November 16, however, the resolution was defeated.
At the Superior Court hearing on the validity of the council’s vote, Judge Weinstein made a finding that:
... [T]he City Solicitor had been called upon to render an informal opinion respecting the potential for conflict if the individual defendants participated in the vote on the resolution to authorize an appeal to the Tax Court, and he did find that there existed a potential conflict, and that it was in his opinion a conflict of interest.... That advice presumably was heard by all councilmen present at that work session which did not include the defendant Amadeo. ...
The trial judge further found that although the appeals filed by the three councilmen involved “were miniscule in comparison *525 to the total number of 484 [appeals] that had been filed, nonetheless the individual defendants [the aforesaid three councilmen] were in the exact same position as the other 481 taxpayers who had filed their appeals.”
The trial judge concluded, in setting aside council’s “no” vote, that the three councilmen involved held positions of public trust and had a potential pecuniary interest in the appeals. Their participation in the vote, therefore, was a conflict of interest. Accordingly, the resulting defeat of the resolution was unlawful.
Where a member of a governmental body has a direct personal interest in a matter coming before such body, he is disqualified from voting thereon. Where, nevertheless, he participates in the voting without disqualifying himself, the entire proceeding is voidable. Piggott v. Hopewell Boro., 22 N.J.Super. 106, 111-112, 91 A.2d 667 (Law Div. 1952).
Defendant certainly cannot be charged with the unlawful acts of the three council members under the theory of respondeat superior; as Judge Weinstein concluded, however, elected public officials assume a position of responsibility and public trust, and “act in the same fashion as a trustee acts towards a beneficiary of the trust, a high fiduciary responsibility.” Although defendant in the instant case cannot in any way be held responsible for the unlawful acts of the councilmen involved, the latter’s improper conduct would have benefited the class of persons to which defendant belongs and equity demands that defendant cannot benefit by these unlawful acts.
Since the 1981 revaluation was approved and accepted by the Taxation Division Director and the county board, it is presumed that a bona fide attempt was made to achieve equality for all taxpayers by assessing all real property at 100% of true value. If the 292 assessment reductions are permitted to become judgments final by reason of N.J.S.A. 54:2-43 (the Freeze Act), they will be binding upon the city for two additional years.
This court recognizes that the county board’s judgments are presumed correct and the burden to establish otherwise is *526 upon the city. In the event that the assessor’s allegations are correct, precluding the appeal because of the three councilmen’s unlawful acts would result in the remaining taxpayers sharing a disproportionate share of the municipal tax burden for a period of three years. In such an event, the equality attempted to have been achieved by the reassessment program would be impaired.
An analogous situation involving the public interest was recently addressed by our Appellate Division in Precision Industrial Design Co. v. Beckwith, 185 N.J.Super. 9, 447 A.2d 186 (App.Div.1982). There, plaintiff’s application for site plan approval was rejected within the time limits for such action set forth in the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq. The Land Use Law provides for automatic approval in the absence of a timely rejection. The board meeting at which plaintiff’s plan was rejected in Precision was held invalid due to violation of the notice provisions of the Open Public Meetings Act, N.J.S.A. 10:4-6 et seq. Plaintiff argued that its plan was automatically approved because a subsequent, valid meeting was held only after the time provided for board action had passed. Rejecting this argument, the court held that
... under the circumstances here the grant of such a remedy to plaintiff is not mandated by the terms and policy either of the Open Public Meetings Law or the Municipal Land Use Law, and we are, moreover, persuaded that the grant of that remedy here would be inimical to that of the public interest, [at 14, 447 A. 2d 186],
The court, 87 N.J.Super. at 19, 47 A.2d 186, went on to emphasize that the “remedy must not, of course, be permitted to be more deleterious to the public interest than the wrong it is designed to correct.” The public interest would be equally ill-served in the instant case if plaintiff was foreclosed from appealing to this court.
Even though a statutory tax appeal period may not be extended, where, as here, elected officials who are charged with representing the interests of all of their taxpayers have violated that trust, in calculating the 45-day period there is not to be included therein the time between the occurrence of the unlawful vote and the date when this violation was rectified. This *527 conclusion is mandated to avoid a grave injustice to the many-other taxpayers whose properties have been revalued.
Accordingly, the 45-day appeal period runs from November 9, 1981 until November 16,1981, at which time it is suspended until December 7,1981 when it then continues to run. Based thereon, I find that the filing date of January 4,1982 is within the 45-day statutory limitation and that this court therefore, has jurisdiction to entertain this appeal.
The motion for summary judgment filed by defendant is denied.