HOPKINS, J.T.C.
The Supreme Court has ordered defendant’s motion for leave to appeal be granted and the matter has been remanded to the Appellate Division for consideration on its merits. That appeal was from my decision not to enter judgment pursuant to an agreed settlement in accordance with the request of the parties. This supplemental opinion is issued pursuant to R. 2:5-1(b).
This case was commenced with an appeal by taxpayers from a judgment of the Essex County Board of Taxation which affirmed the local property tax assessment of $271,400 applicable to Block 1, Lots 37-39 and 41-2 for the taxable year 1981. At that time there was also an appeal pending with this court relative to the same property for the taxable year 1980 by the then-owner, Laura Hubschman, under Docket No. 07-19087C-80.
Subsequent to the cases being docketed, counsel for the respective parties conferred and agreed to settle the eases by withdrawing the complaint for the taxable year 1980 and by reducing the assessment for the taxable year 1981 from $271,-400 to $225,000. At the same time the parties requested that the reduced assessment be frozen for the taxable years 1982 and 1983 pursuant to N.J.S.A. 54:2-43, commonly referred to as the Freeze Act.
The form stipulation of settlement submitted by the parties had obliterated the standard provision which would read as follows:
*3 The assessor of the taxing district has been consulted by the attorney for the taxing district with respect to this settlement and has concurred.
When personnel from the office of the Clerk of the Tax Court contacted the attorney for the municipality, they were advised that the assessor had not concurred in the settlement. Accordingly, the matter was forwarded to me for an appropriate disposition.
I directed the parties to appear before me on June 4,1982, for a hearing on the merits of the settlement and also directed the township assessor to be present to set forth his reasons for disapproval of the settlement. At such hearing the municipal attorney detailed his reasons for agreeing to the settlement. In substance, he was faced with litigation for both 1980 and 1981. The property had sold for a stated figure of $320,000 on August 11, 1980. The closing statement showed that an additional $20,000 was paid for personalty. While the municipal attorney was advised that the assessor believed the $20,000 should be treated as applicable to real estate, he believed it was a difficult position to prove and probably could not be sustained after a complex trial on that issue alone.
The real estate expert retained by the municipality had submitted an appraisal report which valued the property as of October 1,1979 at $320,000, thus, in effect, recognizing the sale price of the real estate as shown on the closing statement as representing the fair value of the property. He reviewed the appraisal report of the taxpayers’ expert which also stated that the sales price of $320,000 was a fair price for the property for the year 1980. Further, that appraisal report contained a ratio study indicating that for the year 1980, the State Director’s ratio was 73.15%, the one-year weighted ratio was 64.76% and the one-year unweighted ratio was 64.91%. The Chapter 123 ratio for 1980 was 85% with the upper limit at 98% and the lower limit at 72%. As the assessment of $271,400 represented a ratio of 84.8% of the $320,000 purchase price, the municipality’s attorney proposed that taxpayers withdraw the appeal for 1980. This, in fact, was done as part of the settlement.
*4 Municipality’s expert had not prepared an appraisal report for 1981. However, taxpayers’ appraisal report indicated that the State Director’s average ratio for South Orange was 64.52%, the one-year weighted ratio was 57.74% and the one-year unweighted ratio was 59.09%. Further, the Chapter 123 average ratio for South Orange was 74% with an upper limit of 86% and a lower limit of 62%. Municipality’s attorney’s reasoning was that if his expert concluded that the $320,000 market value was applicable as of October 1, 1980, he would be faced with the ruling in Murnick v. Asbury Park, 2 N.J. Tax 168 (Tax Ct. 1981).[1] In that case, the Tax Court granted ratio relief despite the fact that the assessment was within the Chapter 123 range. He was also recognizing that the municipality would face legal costs as well as the cost of an appraisal for the taxable year 1981 in the event the matter was tried. Accordingly, considering Mumick and the legal costs, the proposal was made that the settlement be at a ratio of 70% of the $320,000 sales price.
These proposals had been discussed with the assessor who objected based on both the utilization of a ratio other than that provided by Chapter 123 and, also, on the grounds that the $20,000 personalty figure should be added to the $320,000 sales price. In view of the disagreement, the South Orange administrator was consulted by the attorney and they agreed that the settlement would be advantageous to the municipality.
At the hearing, the assessor testified that he had been kept advised of the negotiations by the municipal attorney but that he had disagreed with the 1981 settlement for the reasons previously stated.
After listening to the assessor’s testimony and the argument of the parties involved, this court concluded that the settlement through the use of a ratio, particularly where the Mumick case *5 was still applicable, was a justifiable approach to disposition of the subject case. However, since the attorney had acted without an appraisal report as of October 1,1980, he was directed to obtain an appraisal report from the municipality’s appraiser and supply a copy to the court. Subsequently, this court received a letter-appraisal report from the municipality’s appraiser in which he stated that the personalty encompassed in the $20,000 figure was, for the most part, attributable to real estate. That report, based upon that finding, concluded that the market value of the subject property as of October 1, 1980 was $343,-400. That resulted in a ratio of assessment to true value of 79.03% which was within the assessment protection range of Chapter 123.
Upon receipt of that appraisal report, the court concluded that the municipal attorney had agreed to a settlement without full knowledge of all the facts and so refused to enter the consent judgment.
It should be noted that R. 8:9-5 provides as follows:
Judgment pursuant to stipulation: Judgment in a local property tax matter may be entered upon stipulation of the parties supported by such proof as the court may require.
In order to facilitate the disposition of those cases which have been settled, the Tax Court implemented a procedure which permitted the entry of judgment pursuant to agreement of the parties provided that there be contained therein a statement that the assessor for the taxing district had been consulted by the attorney for the taxing district and had concurred therein. It was the obliteration of that statement which brought the court’s attention to the possibility that, in accordance with R. 8:9-5, there was need for proof to support the disposition.
Utilization of the assessor’s approval, to facilitate the disposition of Tax Court cases, is consistent with the history of assessors in New Jersey. The court in Ream v. Kuhlman, 112 N.J.Super. 175, 270 A.2d 712 (App.Div.1970), certif.den. 59 N.J. 267, 281 A.2d 529 (1971), in commenting on the role of the assessor in New Jersey, stated as follows:
*6 The reasons for insulating a tax assessor with a fixed term of office are manifold. His office, an integral part of our state, county and municipal governments, is chargeable with the administration of a statutory system relating to the levy, assessment and collection of property taxes. He is an agent of the Legislature, and his discretionary judgment is reviewable only through the administrative and judicial processes provided by law. Although his jurisdiction is local, his powers and duties are prescribed by the Legislature, and it is of paramount importance that the integrity of his office be in no way diluted by local interference. [112 N.J.Super, at 190, 270 A.2d 712]
As noted in Clinton Twp. Citizens’ Comm. v. Clinton Twp., 185 N.J.Super. 343, 448 A.2d 526 (Law Div.1982), it was in recognition of the crucial role of the assessor in the field of local property tax assessment and administration that the Tax Court adopted the procedure which required the direct involvement of the assessor in settlements.
It is also to be recognized that a Tax Court judgment, entered as the result of a settlement, affects the year involved and also, pursuant to the Freeze Act, generally affects the subsequent two years. N.J.S.A. 54:2-43. The proposed settlement herein provided for application of the Freeze Act to the taxable years 1982 and 1983. It was the application of the Freeze Act to a base year on which judgment had been entered by settlement that was the subject of discussion in So. Plainfield v. Kentile Floors, Inc., 186 N.J.Super. 399, 453 A.2d 182 (App.Div.1982). The court was faced with the issue of whether a settlement for the taxable year 1979 could support a Freeze Act disposition for the taxable year 1980. In holding that the 1979 settlement constituted a disposition which would support a Freeze Act application to 1980, the court relied upon the fact that the settlement for 1979 was entered in conformance with the rules and practices of the Tax Court. As previously stated, those rules and practices require a settlement to be supported by such proof as the court may require.
R. 8:9-5 and case law support the proposition that the Tax Court can refuse to enter a consent judgment if, at a hearing, it is not satisfied with the proof offered in support of that judgment. Here, the hearing showed that the municipality entered into the settlement at a time when it did not have adequate knowledge of the fair market value of the subject *7 property as of October 1, 1980. That fact is supported by the municipality’s appraisal report which was submitted to the court subsequent to the hearing.
In view of the above, it is my conclusion that the proposed settlement was not supported by adequate proof.

 Since the date of the hearing, the Supreme Court, 95 N.J. 452, 471 A.2d 1196 (1984), affirmed in part and reversed in part the Appellate Division reversal, 187 N.J.Super. 455, 455 A.2d 504 (App.Div.1982), of the Tax Court decision in Murnick.