SMALL, P.J.T.C.
The issue before me is whether the assessor of Greenwich Township may invoke the attorney-client privilege (N.J.R.E. 504, N.J.S.A. 2A:84A-20) in refusing to answer a question posed during his deposition conducted as part of a local property tax appeal.

I.

The facts and procedural history of this ease are not complex. On February 1, 2001, as part of the litigation in which plaintiffs are challenging their tax assessments for the tax years 1998,1999 and 2000, Mi'. Frank Leone, the Assessor of Greenwich Township, was asked about discussions he had with the Township’s attorney concerning the assessments that are the subject of these appeals. He refused to answer on the grounds that his conversations were protected by the attorney-client privilege. I was called on the telephone and ruled (based in part on (a) the opinions in Rosenberg v. South Orange Tp., 8 N.J. Tax 1(Tax), aff'd 8 N.J. Tax 7 (App.Div.1983) and Clinton Tp. Citizen’s Comm. v. Clinton Tp., 185 N.J.Super. 343, 448 A.2d 526 (Law Div.1982) and (b) the fact that the municipal attorney and Mr. Leone had previously asserted that, for purposes of determining whether he should appear at a deposition, the municipal attorney was not his attorney) that the privilege did not apply.
An interlocutory appeal was taken from my ruling. The Appellate Division remanded the matter with instructions to make a full record.
*69 A trial was held at which I heard the testimony of six witnesses: the assessor of Greenwich Township, the solicitor of Greenwich Township, two other assessors, and two other municipal attorneys. I have concluded, after analysis of the evidence on remand, that my initial determination was incorrect.
Although the statutory obligations of an assessor and his or her statutory relationship to the municipal attorney support my initial conclusion that the assessor should be independent from the municipality and not represented by the municipal attorney, the actual, long-standing, and widely-accepted relationships between Mr. Leone and Greenwich Township and other assessors and municipal governments goes well beyond the simple statutory duty of making independent assessments of property. Whether these extended duties are appropriate and consistent with the assessors’ primary duties is not the issue before me. But the actual relationship of the assessor to the municipality cannot be ignored.
I am forced to choose between the conflicting objectives of the world as prescribed by the statute (independent assessors) and the world as it exists (assessors who are part of the municipal family working for the mayor and council). Given the world as it exists, I find that Mr. Leone, the assessor, had a reasonable expectation that his conversations with Mr. DiMuzio, the municipal attorney, were privileged. I should have permitted Mr. Leone to assert the attorney-client privilege and decline to answer the questions asked.
The description of the independent role of the assessor vis-a-vis the mayor and council found in the statutes and case law stands in contrast to the evidence presented to me on remand.
The thrust of the testimony was that assessors act as agents of the municipality in defending their assessments; they are part of the municipal government, advising the mayor and council on everything from local budget issues to valuations of real estate being sold or taken by eminent domain (“condemned”) by the municipality. They are delegated, often by municipal resolution, the responsibility of working with the local municipal attorney to prosecute, defend, and settle local property tax appeals. They are *70 part of the municipal government family and the municipal tax appeal litigation team. The appropriateness of this relationship and whether it is consistent with their obligation to make assessments independently and objectively are not before me. It is clear from the testimony that I heard that the assessors, as part of them actual function of defending against challenges to tax assessments, consult with municipal attorneys and share information with those attorneys as if those attorneys were representing the assessors and their employer, the municipal government. I have no doubt that the assessor, Mr. Leone, expected his conversations with the Township Solicitor, Mr. DiMuzio, to be conversations with his attorney. Whether it was reasonable and appropriate for him to have such expectations is the subject of this remand.

II.

Mr. Frank Leone has been the assessor of Greenwich Township (“Township”) since 1956. He testified that he solicits and receives legal advice on his assessing duties from the Township Solicitor, Mr. DiMuzio, and the Township’s special tax counsel, Messrs. Peter J. Zipp and Saul A. Wolfe. He has never sought legal advice from anyone else. He testified that, if his conversations with these attorneys were not confidential, he could not tell them everything they need to know. He has authority to settle cases at the county board of taxation without consulting with anyone. He is involved in hiring experts for tax court litigation. He discusses settlement of tax appeals with the municipal attorneys.
He further testified that, although he is autonomous when he sets assessments, he is the agent of the local government when defending those assessments. He decides on settlements and appears for Greenwich in defending assessments. He has sought advice from the Division of Taxation and the municipal solicitor.
Michael S. Barker, the full-time assessor in Ridgewood and part-time assessor in North Haledon, testified as to his experience as an assessor. He has been working in the assessment field since 1977 and has held the designation of C.TA. (“Certified Tax Assessor”) for twenty years. He is the immediate past-president *71 of the Association of Municipal Assessors of New Jersey and has been active in the assessors’ associations in Bergen and Passaic counties. Mr. Barker was asked to describe his work as an assessor, and he indicated that it principally involved the valuation of properties for tax assessment purposes, the determination as to whether specific properties should be exempt from taxation or benefit from special farmland assessments, and participation in the Director of the Division of Taxation’s annual data collection efforts in connection with the Director’s Sales Ratio Study. See generally Division of Taxation, Handbook for New Jersey Assessors (1989) § X (“Assessors Handbook”). He testified that he gets any legal advice he needs from the municipal attorney, and he does not seek legal advice from the County Board of Taxation or the Director of the Division of Taxation. He considers himself an employee of the municipality. He further testified as to his role in selecting contractors for revaluations and his role in defending municipal appeals. Marked in evidence was a resolution of the Ridgewood council which designated him to prosecute, defend, and settle municipal tax appeals. He considers himself an agent of the municipality in connection with litigation over tax assessments, and he answers the interrogatories propounded on the municipality in consultation with the municipal attorney. He discusses settlement with the municipal attorney, and he prepares a report for the mayor and council recommending acceptance or rejection of settlement proposals. Although the municipality may hire an outside expert appraiser, Mr. Barker often prepares reports for and testifies as to value during municipal tax appeal hearings at the County Board of Taxation or in the Tax Court.
He indicated that he considers himself part of the municipal family and a municipal employee and that the only time he does not answer to the municipality is when he makes his assessments. He admitted that there is no statutory requirement that he perform many of the functions that he does perform, but those functions are part of his unwritten contract of employment with Ridgewood. He indicated that confidentiality is required during the litigation process, but that he does not need to have confidential communications when he sets assessments. He later testified *72 that he requires legal advice in setting assessments. For example, he seeks advice relating to (1) whether the setting of an assessment for the current year would have an effect on litigation pending for prior years and (2) what information he was legally allowed to use in setting the assessment. He indicated that he gets that advice from the municipal attorney. He testified that he was hired by the municipality, but is subject to disciplinary action by either the County Board of Taxation or the Director of the Division of Taxation. Because of his belief and understanding that his relationships with the municipal attorney are confidential, he has never asked the Division of Taxation for legal advice and, when he has sought advice from the County Board of Taxation, that advice was not forthcoming. Finally, he indicated that he does not always follow the advice of the municipal attorney.
I conclude that Mr. Barker testified candidly about his many roles in the tax assessment and tax appeal processes. Although he testified that his role in setting assessments is completely separate from some of his other roles, I find that it is not. He is most independent when he sets assessments, but he is influenced by his role as a part of the municipal family. He testified that, in setting assessments for current years, he might consult with the municipal attorney because the assessment he set for a current year might have an effect on litigation contesting prior years’ tax assessments and on potential litigation of the current and future years. (As a matter of law, those consultations are probably inappropriate because the assessor’s sole responsibility in setting assessments is to see that the value placed on property is at fair market value. In setting assessments, consideration of litigation strategy regarding current and prior years’ assessments is both irrelevant and improper as a matter of law and the statutory duties of the assessors.) That candid testimony supports a conclusion that the assessor’s role in setting assessments on properties that were currently in litigation was not a completely independent function. The assessor might, in some ways, be sensitive, if not completely subservient, to the interests of the mayor and council as he or she might be instructed or advised by the municipal *73 solicitor, an agent of the municipality, who has no obligation to be objective in the defense of municipal tax appeals.
It would appear that the multiple roles of the tax assessor pose perhaps irreconcilable conflicts. Demands are made on an individual assessor to be independent on the one hand and a loyal employee of the municipality on the other. Mr. Barker considered his relationship with the municipal attorney to be of a confidential nature. His testimony reinforced the Township’s position that the relationship between the assessor and the attorney was subject to the attorney-client privilege. However, his testimony raised questions about his and other individual assessor’s ability to reconcile the statutorily prescribed, and essential, independence when setting assessments of properties with the loyalty he owes to his municipal employer.
Mr. Barker also testified that he advises the municipal government, and in particular the municipal attorney, on the choice of experts in tax appeal cases and on appraisers to be used in revaluations. It is necessary that he provide confidential advice to the municipality and attorney. For example, he advises the attorney about the reputation of appraisers. Were that advice discoverable, he would feel less able to give frank advice because, obviously, such advice denigrating the skills of someone eventually chosen would greatly harm the credibility of the town’s chosen expert.
Mr. Bernard Haney, the assessor in Neptune, Barnegat Light, and Harvey Cedars and chairman of the Legal Committee of the Association of Municipal Assessors of New Jersey (“Association”), testified that he is an active member of the Association. In connection with that membership, he indicated that he attended several seminars in which the role of the assessor in tax appeals was discussed. He asserted that, when he needs legal advice in setting assessments, for example, to determine whether properties are exempt from taxation or what is to be considered in setting the assessment, he gets this advice from the municipal attorney. He believes that those conversations are confidential and privileged and that neither he nor the attorney can be compelled to *74 disclose them. He has sought assistance from the County Board of Taxation and the Division of Taxation, but he was never able to speak to an attorney. In fact, when he asked the Division of Taxation if he could speak to a deputy attorney general he was told he could not. He testified that in the context of tax appeals he is part of the municipal team. When he is an expert witness, he consults with the municipal attorney or special municipal tax counsel for strategies in conducting those appeals. He indicated that, in his three assessor positions, Neptune was different from Barnegat Light and Harvey Cedars. Barnegat Light and Harvey Cedars are predominantly residential and he, as an agent of the municipality, handles ninety-percent of the appeals at the county board without the assistance of an attorney. In Neptune, where there is a more diverse rateable base, he generally hires an expert to testify on behalf of the municipality, but he is involved in all aspects of discovery. In connection with the selection of a revaluation company, he testified that, before he wrote the specifications for performing the revaluation, he had confidential discussions with the attorneys about the specifications and he had further discussions about selecting the winning bidder. He stated he decides whether there should be a counterclaim filed in a tax appeal. (A counterclaim is a challenge by the municipality to the assessment set by the assessor.) Thus, the assessor, as a part of the municipal litigation team, makes the determination to challenge his own independent assessment. He was not asked nor did he testify as to the logical conflicts of these dual roles.
On cross-examination, Mr. Haney testified that he is an agent of the Legislature and not an agent of the municipality when he is valuing the property. At some point in the process, he becomes a part of the municipal team and was not quite sure when that took place. His testimony was similar to Mr. Barker’s in terms of the role he played in defending municipal tax assessments. Like Mr. Barker, he testified that he had many obligations and responsibilities in the municipality beyond the assessment of property for tax purposes. Only when he sets the assessments is he acting as an agent of the Legislature, and at all other times he works for Neptune or the other municipalities that employ him. He indicat *75 ed that he is both an agent of the municipality and an agent of the Legislature and that he would be reluctant to share information with the municipal attorney if he felt that those communications were not protected.

III.

Mr. Fred Semrau, a lawyer, has represented the following municipalities: Garfield, Denville, Boonton, Mendham, Netcong, Long Valley, Roxbury and Stillwater. He has done so at least since 1993. His principal work is that of litigation and advice, and he testified as to the number of matters that he annually handled for each municipality in the county tax boards and the Tax Court. These statistics indicate that he is an experienced municipal tax appeal attorney. He has been hired as special tax counsel and has worked on revaluations in several municipalities. He provides legal advice to the assessor and other municipal officials. He gets inquiries on a daily basis from assessors both prior to and subsequent to their setting of assessments. Prior to the setting of assessments, he advises the assessor on issues such as spot assessments (see West Milford v. VanDecker, 120 N.J. 354, 576 A.2d 881 (1990)), requests for income information known as Chapter 91 requests (N.J.S.A. 54:4-34), and requests for property record cards. After assessments are set, he advises assessors on negotiations with taxpayers and other issues which may lead to litigation.
Mr. Semrau is a member of the Institute of Municipal Attorneys and has attended their seminars. He is a C.P.A. as well as an attorney. His membership in the Institute of Municipal Attorneys is a membership based on affiliation and not examination or expertise. He indicated that he was familiar with the position of the League of Municipalities and that he had been to a seminar in which Mr. Wolfe lectured and that he has read Mr. Wolfe’s article on the issues presented by this case (Saul A. Wolfe, Role of Local Tax Assessor Threatened by Tax Court Ruling, NEW JERSEY MUNICIPALITIES, June 2001, at 62). He stated that he is testifying in this case without compensation and believes that the *76 issue is an important one. Athough he is not familiar with the Assessor’s Handbook (a book prepared by the Director of the Division of Taxation setting out the duties and obligations of assessors and providing useful practical instructions on the discharge of their duties), he knows what it is and is aware of its existence. Mr. Semrau indicated that he is paid by municipalities. He indicated he often gives advice about the issue of farmland assessment.
He indicated that he has been involved in the issue of privileged communications and that in 1998 he addressed an opinion to the assessor of Garfield regarding an exemption and said that that opinion should not be disclosed because of the attorney-client privilege. With regard to proceedings in the county board of taxation, he indicated that the assessor often has exclusive settlement authority up to certain dollar limits. Athough he may sit next to the assessor, the assessor conducts much of the proceeding on behalf of the municipality. He also indicated that assessors may make recommendations regarding settlement even if they do not have settlement authority. Thus, the assessors will make recommendations to the county board which the county board may incorporate into a ruling. With regard to the making of Chapter 91 motions or motions to dismiss for failure to pay taxes, Mr. Semrau indicated that the assessor is an integral part of what “we do” at the county board (with the “we” referring to municipal governments) and that, from his perspective, confidentiality was essential. Mr. Semrau indicated that, in cases contesting the amount of an assessment, when the taxpayer submitted comparable leases and comparable sales, he, as the municipal attorney, discussed the specifics of the taxpayer’s submissions with the municipal assessors. He indicated that he thought that the assessor was his client and that the assessor was an agent, officer, and employee of the municipality.
Mr. Semrau further testified that assessors and municipal attorneys write confidential letters to the governing bodies recommending settlement of cases. Assessors brief the municipal officials on the merits of settlement. Mr. Semrau sometimes uses the *77 assessor as his expert witness and his conversations with the assessor (as with any expert) must be confidential in order to encourage the free flow of information. Without the free flow of information he could not adequately represent “our client, the municipality” in an effective manner. He indicated at another point in his testimony that his client was the municipality, and he shares information with the assessor as if the assessor were his client. Thus, he considered both the municipality and the assessor to be his client. He indicated that municipalities seek information from assessors with regard to development applications, acquisition of land, condemnation, budgeting, revaluations, and tax abatements. Mr. Semrau indicated that the assessor is not a party to the tax appeal and that he is unaware of any municipality that denies the assessor access to the municipal attorney for purposes of seeking legal advice. He indicated that any problems with an assessor’s reappointment leading to tenure would be a personal matter and that he would not advise the assessor on such an issue. He also indicated that he would not represent the town in any action against the assessor because he has to work with the assessor who is “part of the municipal family.”
On cross-examination Mr. Semrau indicated that the assessor is an agent of the Legislature and the municipality. See § IV of this opinion, below. Mr. Semrau’s testimony was consistent with the testimony of the assessors who had testified that they are answerable to several masters in performing several different functions. Mr. Semrau indicated that one of the reasons that it is necessary to keep conversations confidential between the attorney and the assessor was the need to prevent disclosure of the fact that the assessor took action contrary to the advice of the municipal attorney. He could not cite any statutory authority for the proposition that the assessor was an agent of the municipality, although he indicated that the assessor’s loyalty is to the municipality.
Mr. Anthony Andora, an experienced municipal attorney who represents many municipalities in tax appeal proceedings, also testified. However, after extensive voir dire with regard to his *78 background and qualifications to testify, the parties stipulated that Mr. Andora’s testimony would in effect be cumulative. The parties stipulated that his testimony would be substantially the same as Mr. Semrau’s.
Mr. Kenneth DiMuzio is the attorney for Greenwich Township as well as Logan Township. He testified that his job was to advise the municipal assessor and other municipal officials. He indicated that the assessor has both municipal duties and statutory duties although the municipality is his only employer and sole source of his salary. In addition to his statutory duties, Mr. DiMuzio indicated that Mr. Leone helped him in the sale of municipal property, advised him with regard to condemnations, and was the in-house municipal expert on land value. He considers his conversations with the assessor to be privileged and confidential. In connection with tax appeals, Greenwich Township has a special tax counsel. Mr. DiMuzio indicated that discussions among special tax counsel, the tax assessor, and himself needed to be confidential. In particular, he relies on the local assessor’s evaluation of experts and needs frank communication from the assessor on that topic. For example, Mr. DiMuzio stated that he wanted to know if a proposed appraisal expert was credible. Mr. DiMuzio indicated that, although he does not participate in Tax Court litigation with regard to the assessments on industrial properties, he does participate in the settlement discussions. During the settlement conferences, the mayor, the president of the municipal council, and Mr. Leone, the assessor, had private meetings prior to their meeting with the taxpayer and the taxpayer’s representatives. In those meetings, Mr. DiMuzio testified it was essential that there be full and frank discussion with the assessor about the strengths and weaknesses of the case. At the county board level, Mr. DiMuzio indicated that he works directly with the assessor although there are not that many appeals at the county board level. He could not recall a settlement that the assessor recommended that the municipal council did not accept. He also stated that there was never any attempted influence by the town on the assessor in setting his assessments. He indicated that the council had passed a resolution giving the assessor and municipal *79 counsel the authority to file counterclaims as agents of the township when taxpayers appealed their tax assessments. The assessor has the authority to settle cases where up to $40,000 in revenue is involved. With regard to the settlement of cases and specifically a former case of Mobil against Greenwich, the settlement proposal was presented to the mayor and council in a closed session in which the assessor advised the council. It is Mr. DiMuzio’s belief that those conversations were privileged and that any disclosure of those discussions in weighing settlement terms could only help the Township’s adversary, the taxpayer. Mr. DiMuzio testified that there were other closed sessions of the municipal council in which Mr. Leone met with the council in order to discuss litigation and settlement, and that these settlement discussions cannot take place in a public forum.
On cross-examination, Mr. DiMuzio testified that in setting assessments the municipal assessor was an agent for both the Legislature and the municipality and not an agent for the taxpayer. He did not recall having been asked his opinion with regard to tax exemptions, and he did not recall ever having been asked a question regarding the law on any issue prior to litigation. He testified that the assessor’s job goes beyond that of simply making assessments, and that the assessor gets one salary for performing all of his municipal functions. Although Mr. DiMuzio testified that he has never been asked by the assessor for advice in terms of setting assessments, he indicated that Mr. Leone might have asked for special tax counsel’s advice.

IV.

A municipal tax assessor’s basic obligation is to “determine the full and fair value of each parcel of real property situate in the taxing district at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract____” N.J.S.A. 54:4-23. Municipal tax assessors serve both local and state governmental needs. Thus, a municipal tax assessor serves several masters because he or she is subject to the control of both the municipality and the State. Casamasino v. City of Jersey City, 158 N.J. 333, *80 344, 730 A.2d 287 (1999); Mitchell v. City of Somers Point, 281 N.J.Super. 492, 499, 658 A.2d 1276 (App.Div.1994); Jeffers v. City of Jersey City, 8 N.J. Tax 313, 316-17 (Law Div.1986), aff'd, 214 N.J.Super. 584, 520 A.2d 797 (App.Div.1987); Horner v. Ocean Tp. Comm., 175 N.J.Super. 533, 538-39, 420 A.2d 1033 (App.Div.1980).
This “hybrid” nature of the position of municipal tax assessor is evident from the fact that the duties of the office, the method of assessment, and the manner of assessment and recordation are governed by statute, the Director of the Division of Taxation, and the County Board of Taxation. See N.J.S.A. 54:1-6 to -30. On the other hand, the municipality pays the salaries of the assessors, all subordinate personnel, and all costs of operating the assessor’s office. Furthermore, a municipal government is vested with the authority to appoint the assessor, N.J.S.A. 40A:9-146, and sets the assessor’s hours of work and compensation. The municipality, however, is restricted in its appointment powers to persons who have received a tax assessor’s certificate from the Director of the Division of Taxation. N.J.S.A. 54:1-35.30. Assessors have fixed terms of office. N.J.S.A. 40A:9-148. If a tax assessor has a tax assessor’s certificate and completes not less than four years in office, he or she will, upon reappointment, attain tenure in office and hold his or her position during good behavior. Thereafter, an assessor can be removed only for good cause after a hearing before the Director of Taxation or his designee. N.J.S.A. 54:1-35.31. The assessor is subject to state controls that include investigation by the Director of the Division of Taxation concerning his or her methods. N.J.S.A. 54:1-26 and -19. Furthermore, the assessor must comply with the directions of the county tax administrator who, in turn, is charged with carrying out such functions under the supervision and control of the county board of taxation. N.J.S.A 54:3-16. Finally, it is a statutory requirement that assessors and county tax boards must be notified of complaints filed and judgments entered in the Tax Court involving assessments within them jurisdictions. N.J.S.A 54:2-40.
The reasons for insulating a tax assessor with a fixed term of office are manifold. His office, an integral part of our state, county and municipal governments, is chargeable with the administration of a statutory system relating to the levy, *81 assessment and collection of property taxes. He is an agent of the Legislature, and his discretionary judgment is renewable only through the administrative and judicial processes provided by law. Although his jurisdiction is local, his powers and duties are prescribed by the Legislature, and it is of paramount importance that the integrity of his office be in no way diluted by local interference.
[Ream v. Kuhlman, 112 N.J.Super. 175, 190, 270 A.2d 712 (App.Div.1970) (emphasis added) (footnote omitted).]
Twenty years ago Judge Richard Conley wrote:
The relationship between the roles of municipal governing bodies and tax assessors in the context of local property tax matters has been a matter of some uncertainty in recent years and it is a subject that warrants a rather extensive discussion in this ease because it has such general application.
[Clinton Tp. Citizen’s Comm. v. Clinton Tp., supra at 348, 448 A.2d 526.]
The uncertainty remains and needs to be reexamined in this case.
The Legislature has provided veiy clearly that it is the initial and primary responsibility of the assessor to determine property tax assessments. N.J.S.A. 54:4-23, 4-24, 4-27 and 4-35. In performing his assessment duties the municipal tax assessor acts under the supervision and control of his county board of taxation and the Director of the Division of Taxation. N.J.S.A. 54:3-16; N.J.S.A. 54:1-27 and 54:1-35.31.... [T]he Legislature has insured a certain degree of independence and job security for assessors because of the need to insulate them from local political pressures. See N.J.S.A. 40A:9-151 and 9-165; L.1981, c. 393.
[Id. at 353, 448 A.2d 526.]
The courts have also been protective of the integrity of the role of the tax assessor. In Arace v. Irvington, 75 N.J.Super. 258,183 A.2d 104 (Law Div.1962), an assessor was faced with an effort by the municipality to investigate his practices, in particular his method of assessing property, after a great number of taxpayers had complained about their individual assessments. In holding that the municipality had no right to examine the assessor as to his assessment practices, the court said:
It is the judgment of the municipal assessor which the Legislature has determined to be the method for determining the true value of the property within a single taxing district. In exercising said judgment, the assessor is exercising a quasi-judicial authority as an agent of the Legislature, subject to the control and supervision of the county boards of taxation and the Director of the Division of Taxation in the manner provided by statute.
The assessor, in his relation to the municipality, is in much the same position as a magistrate. See Kagan v. Caroselli, 30 N.J. 371, 153 A.2d 17 (1959), wherein the court stated that “the power [of the municipality] to appoint did not make the functions of a magistrate a phase of local government. Rather, in exercising the appointive power, the governing body acts merely as a statutoiy agent.” In determining property values, assessors, like judges, should perform their duties without fear or favor. Their quasi-judicial duties should be exercised free of pressure and harassment.
[Id. at 354, 448 A.2d 526.]
*82 Nevertheless, in the context of litigation in which the assessor disagreed with the municipality’s desire to withdraw its complaint pursuant to R. 8:3-9 (a complaint may be withdrawn at any time prior to the close of proofs) seeking to increase an assessment as Judge Conley stated:
The difficulty here is deciding who represents the interests of defendant municipality.
[Id. at 357, 448 A.2d 526.]
Judge Conley determined that the assessor who did not agree with the mayor and council could interfere, because of his independent role in the assessment process, with the municipality’s right to withdraw its complaint. Id. at 358, 448 A.2d 526. Thus, there are clearly cases in which the assessor and the mayor and council may be in adverse positions in tax assessment litigation. See also Rosenberg v. South Orange Tp., supra, 8 N.J. Tax 1, (holding that it was appropriate for the Tax Court to consider the independent judgment of the assessor before accepting settlements between taxpayers and municipalities, R. 8:9-5).
As noted above, the Legislature has insured a certain degree of independence and job security for assessors because of the need to insulate them from local political pressures. See Clinton Tp. Citizen’s Comm., supra. The courts have attempted to protect this independence. See Mitchell v. City of Somers Point, supra, 281 N.J.Super. at 499, 658 A.2d 1276; Jeffers v. City of Jersey City, 8 N.J. Tax 313, 317 (Law Div.1986), aff'd, 214 N.J.Super. 584, 520 A.2d 797 (App.Div.1987); Association of Mun. Assessors of N.J. v. Mullica Tp., 225 N.J.Super. 475, 481-82, 542 A.2d 970 (Law Div.1988); Clinton Tp. Citizen’s Comm. v. Clinton Tp., supra, 185 N.J.Super. at 353, 448 A.2d 526; Arace v. Irvington, 75 N.J.Super. 258, 269, 183 A.2d 104 (Law Div.1962).

V.

What the testimony in this ease has revealed is that Mr. Leone and the assessors of New Jersey’s 565 other municipalities are called upon to perform multiple tasks that are at times incompatible. They serve many masters. Their statutory duty is to assess *83 each parcel of real estate at its fair market value every year. The evidence in these cases clearly demonstrated that the assessors’ actual duties involve advising the municipality on tax appeal litigation, condemnation, economic development, and a host of other matters related to property valuation and taxation well beyond the assessors’ primary responsibility of independently assessing property. Although their role in making assessments is supposed to be free from improper influence by the municipality or taxpayers, it is clear from the testimony that they consult with and seek advice from the municipal attorney so as not to jeopardize the municipality’s litigating position with regard to tax appeals. Assessors, as part of the municipal family, recommend and effectively determine, in some cases, when the municipality should challenge the assessor’s own independent assessment. Clearly, no one charged with all of these complex obligations can be completely independent of municipal influence when setting assessments.
The remedy for the incompatibility of the assessors’ roles is not to deny the assessor the protection of the attorney-client privilege. That would result in the unwarranted disclosure of communications with the municipal attorney that they reasonably expected would be privileged. Generally, N.J.R.E. 504 provides that communications between a lawyer and client in the course of that relationship and in professional confidence, are privileged. As previously indicated, the municipal attorney is the attorney for both the municipality and the assessor, despite their sometimes conflicting roles and obligations.
 Although the attorney-client privilege is clearly extremely important, it is not absolute. Fellerman v. Bradley, 99 N.J. 493, 502, 498 A.2d 1239 (1985). In fact, while it has been said that “twjhere the privilege is applicable, ‘it must be given as broad a scope as rationale requires,’ ” United Jersey Bank v. Wolosoff, 196 N.J.Super. 553, 561, 483 A.2d 821 (App.Div.1984) (citation omitted), it has also been said that it “is to be strictly limited to the purposes for which it exists, i.e., the need for consultation between attorney and client without fear of public disclosure.” State v. Humphreys, 89 N.J.Super. 322, 325, 215 A.2d 32 (App.Div.1965). *84 “[S]ince the privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose. Accordingly, it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.” Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) (citations omitted). That said, the privilege has been held applicable to communications between members of governmental agencies and the attorneys for those public bodies. See North Jersey Newspaper v. Passaic County Bd. Of Chosen Freeholders, 245 N.J.Super. 113, 119, 584 A.2d 275 (App.Div.1990); In Re Grand Jury Subpoenas, 241 N.J.Super. 18, 28-29, 574 A.2d 449 (App.Div.1989); and In re State Comm’n of Investigation, 226 N.J.Super. 461, 464, 544 A.2d 893 (App.Div.1988).
The courts must interpret the law with regard to the attorney-client privilege in accordance with the reasonable expectations of the parties and their actual relationship. Accordingly, I will not compel Mi'. Leone to disclose his communications with the municipal attorney because Mr. Leone was working for Greenwich Township in support of its litigation with the taxpayers in these cases, and, in that context, he had every reason to expect that his communications would be held in confidence.

VI.

I would be remiss if I did not comment on the clear conflict revealed by the testimony in these cases between the assessor’s statutory duties to independently assess all properties each year and the many additional functions that have been assigned to assessors by them municipal employers. Because of these additional assignments, assessors in New Jersey, as part of the municipal family of government administration and the municipal tax appeal litigation team, have a challenging task in making annual assessments completely free and independent of the needs and interests of their paymasters, the mayors and councils. Although the appeal of an assessment should be adversarial (a contest between the taxpayer and the taxing district), the setting *85 of assessments must be the objective and independent act of the assessor without regard to the defense of prior assessments and the litigating interests of the taxpayers or the municipalities.
Because of the assessor’s statutorily required independence in making assessments, those assessments have earned a long-standing judicial presumption of correctness. Pantasote Co. v. City of Passaic, 100 N.J. 408, 412-13, 495 A.2d 1308 (1985); Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 105, 89 A.2d 385 (1952); L. Bamberger & Co. v. Division of Tax Appeals, 1 N.J. 151, 159, 62 A.2d 389 (1948); N.J. Bell Telephone v. Newark, 118 N.J.L. 490, 494, 193 A. 844 (Sup.Ct.1937), aff'd 124 N.J.L. 451, 12 A.2d 675 (E & A 1940); Central R.R. Co. of N.J. v. State Tax Dept., 112 N.J.L. 5, 8, 169 A. 489 (E & A 1933), relying in part on the opinion of Justice Brewer in Michigan Central R.R. v. Powers, 201 U.S. 245, 295, 26 S.Ct. 459, 463, 50 L.Ed. 744 (1906),
There is always a possibility of misconduct on the paid; of officials, but legislation would be seriously hindered if it may not proceed upon the assumption of a proper discharge of their duties by the various officials.... Beyond the assumption that these local officers will act from a sense of duty is the further fact that their action affects directly and principally the special communities for which they act, and that, generally speaking, is a sufficient guaranty *'i”\”)
which in turn cites M’Culloch v. Maryland, 4 Wheat 316, 4 L.Ed. 579 (1819); State v. Hawkins, 50 N.J.L. 122, 125, 11 A. 265 (Sup.Ct.1887). The evidence presented in these cases weakens the basis for the presumption of correctness of the assessor’s assessment. For assessors to be completely independent in setting assessments, if they are also charged with being the chief municipal official advising the mayor and council on the whole range of issues that they are involved in today, is extremely difficult. As Chief Justice Marshall wrote in M’Culloch v. Maryland:
The only security against the abuse of this power [to assess taxes] is found in the structure of the government itself.
[4 Wheat 316, 428, 4 L.Ed. 579, 606 (1819).]
The statutory structure of independent assessors prescribed by New Jersey’s statutes (on which I based my initial determination in these cases) runs a serious risk of being compromised by the practice (revealed by the evidence on remand) of local govern *86 ments in New Jersey embracing their assessors and incorporating them into the municipal government family.
The testimony that I heard highlights a need for changes in the way local property tax is assessed in New Jersey. In considering such changes, the Governor, Legislature, and other agencies responsible for tax assessment and tax administration should assure that assessors are employed in a governmental structure which gives them greater freedom to make truly independent assessments.[1] The Legislature is now considering S. 478 and A. 540 which, if adopted by the citizens of New Jersey, will authorize a constitutional convention to examine New Jersey’s system of taxation. Those officials who might consider changes in our State’s tax structure should not be unmindful that any benefits to be derived from changes in the tax structure will be diminished if adequate administration of the property tax system is neglected.

VII.

The'Order previously entered is withdrawn. Mr. Leone’s assertion of the attorney-client privilege was correct and should have been sustained.

 For thirty years there have been studies of and recommendations concerning property tax administration in New Jersey. See e.g. New Jersey Tax Policy Committee (The Cahill Committee) 2 Report 64 (1972) (recommending a state administered system of assessment); Report of the Property Tax Assessment Study Commission (1986) (The Glaser Report); The New Jersey State and Local Expenditure and Revenue Policy (S.L.E.R.P.) Commission, Summary Final Report (July 1988) (proposing state and county administration of tax assessment rather than local assessment); Property Tax Commission, Report of Recommendations to Governor Christine Todd Whitman (1998) (recommending a county based, as opposed to a municipal, system of assessment). See also SIR 18 (2002) (proposing the establishment of a Property Assessment Study Commission).