NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

-------------------------------------------------------x

F & E REALTY BY RACEWAY PETROLEUM,

      Plaintiff,

      v.

TOWNSHIP OF GREEN BROOK,

      Defendant.

: TAX COURT OF NEW JERSEY
: DOCKET NO:  011927-2020
:                011412-2021

-------------------------------------------------------x

Decided:  March 27, 2024.

John W. Zipp and Paul Tannenbaum for plaintiff (Zipp & Tannenbaum, LLC).

Kevin A. McDonald for defendant (Di Francesco, Bateman, Kunzman, Davis, Lehrer & Flaum, PC).

CIMINO, J.T.C.

I.     INTRODUCTION

The primary function of a municipal assessor is to determine the assessed value of every parcel of real property in a municipality. For both 2020 and 2021, the Green Brook assessor determined the value of taxpayer's property using computer assisted mass appraisal and certified the value as correct to the county board of taxation. After the taxpayer filed an appeal to reduce the assessment, the municipality filed a counterclaim to raise the assessment. The assessor prepared

individual appraisals for the properties under appeal for 2020 and 2021 opining the prior assessments set by her are too low. In a prior appeal by the same taxpayer for 2019, the assessor did the same thing. The taxpayer now moves to bar the assessor from testifying contrary to the assessments which she initially certified to the county board.

It is premature to bar the assessor's testimony. The testimony may or may not be problematic considering the inherent independence of the assessor as an agent of the Legislature. While an assessor assesses property, the court assesses credibility. The court must hear the assessor's testimony to assess credibility.

## II.    BACKGROUND

The tax maps of the defendant municipality, Township of Green Brook, designate the property of plaintiff taxpayer, F & E Realty, as Lot 19, Block 19.02. The assessor assessed the property at $825,000 for 2020 and $935,000 for 2021. Green Brook is a participant in the Somerset County annual reassessment demonstration program. The program uses computer aided mass appraisal to set property assessments at 100% of true value each year. See N.J.S.A. 54:1-104(c)(1).

Unlike the annual reassessment demonstration program, the traditional assessment method is to set the assessments every so many years, but not annually. During the intervening years, applying an equalization ratio to the assessed value

allows for comparison to true value.[1]  N.J.S.A. 54:3-17, 1-35.1.  The equalization ratio is determined by an annual sales study of properties sold in the municipality. N.J.S.A. 54:1-35.3; Township of Jefferson v. Dir., Div. of Tax'n, 26 N.J. Tax 1, 5 n.5 (Tax 2011) (citing Memorandum from the Dep't of the Treas., Div. of Tax'n, Local Prop. Tax Bureau, to The Sec'y of Each Cnty. Bd. of Tax'n, All Mun. Assessors, and All Mun. Clerks (July 30, 1970)).  For consistency, the formulas used for the sales study are uniform statewide.  Ibid.

Despite certifying to the county board that the assessments of the property for 2021 and 2022 are correct, the assessor now claims the assessments are incorrect and should increase to $950,000 based upon an eighty-page appraisal report.  See N.J.S.A. 54:4-36 (requiring affidavit of assessor).  The taxpayer wants to limit the assessor to defending the assessments she previously certified to the county tax board, thus barring the assessor from testifying in support of raising the assessments. The taxpayer argues the assessor's status as an independent agent of the Legislature bars her from taking sides with the municipality.  On the other hand, the municipality argues that the assessor is not taking sides, but merely reevaluating the prior assessments.

---

[1]  The frequency of when a municipality conducts an assessment varies. Municipalities have conducted assessments within a decade and others have waited decades.  In all instances, the equalization ratio allows for comparison to true value. The court is not deciding whether it is appropriate for an assessor to support an increase a number of years out from the assessment.

This is not the parties first foray into this issue. The taxpayer previously appealed the 2019 assessment. The assessor assessed the property for $825,000 in 2019. After an appeal by the taxpayer, the municipality cross-appealed and the assessor prepared an appraisal report pegging the assessment at $950,000. The court denied a motion to bar the assessor's testimony. The taxpayer and the municipality withdrew their appeals and the assessment remained at $825,000.

III.    THE ASSESSOR'S TESTIMONY IS NOT BARRED

While it is true the municipal governing body appoints the assessor and provides for both the assessor's salary and her office, the assessor is an agent of the Legislature with the constitutional mandate of ensuring uniform assessments. N.J.S.A. 40A:9-146 (funding); Mobil Oil Corp. v. Township of Greenwich, 20 N.J. Tax 66, 81 (Tax 2002) (agent); N.J. Const. art. VIII, § 1, ¶ 1(a) (uniformity). The assessor is accountable to the Director of the Division of Taxation. N.J.S.A. 54:1-25; -35.29. The county tax board and county tax administrator provide oversight. N.J.S.A. 54:1-36; 3-15, 3-16. "[Assessors] perform 'quasi-judicial functions' by applying 'independent judgment.'" VNO 1105 State Hwy. 36, LLC v. Township of Hazlet, 33 N.J. Tax 20, 26 (App. Div. 2021) (quoting Ream v. Kuhlman, 112 N.J. Super. 175, 190 (App. Div. 1970)).

Assessors have the "challenging task in making annual assessments completely free and independent of the needs and interests of their paymasters, the

mayors and councils." Mobil Oil, 20 N.J. Tax at 84. See also McMahon v. City of Newark, 195 N.J. 526, 541 (2008) ("[T]he assessor – although a municipal employee – remains free of any local control."). Tax appeals exasperate this already challenging task. The Director currently defines the assessor's duties to include "represent[ing] the assessing office and the taxing district at formal tax appeal hearings." N.J.A.C. 18:17-4.1. This longstanding duty of the assessor goes back to at least 1964. Comm. on Training of Tax Assessors, Qualified Tax Assessors for New Jersey 7 (1964).

More than defending her prior assessment, the municipality is calling the assessor to rebut her prior assessments. To that end, she has prepared an eighty-page report outlining a basis to increase her prior assessments. She previously certified the 2020 and 2021 assessments to the county board of taxation as correct. N.J.S.A. 54:4-36. The essence of her testimony is that the individually prepared appraisal report reveals the computer assisted mass appraisal technique she previously utilized is incorrect. In response to a prior appeal, she opined the 2019 assessment to be incorrect as well.

The taxpayer is not challenging whether an assessor can defend her assessments before the county tax board or this court. Instead, the taxpayer is challenging whether the assessor can present testimony that varies from her prior assessments. As explained by Judge Small, "[a]lthough the appeal of an assessment

should be adversarial (a contest between the taxpayer and the taxing district), the setting of assessments must be the objective and independent act of the assessor without regard to the defense of prior assessments and the litigating interests of the taxpayers or the municipalities." Mobil Oil, 20 N.J. Tax at 84-85.

Assessing credibility is something courts do often. Assessing the credibility of an expert such as an assessor or appraiser differs from the run-of-the-mill credibility determination utilized for fact-finding. For typical non-expert fact finding, the court must determine whose version of events are truthful, or many times, more truthful. While truthfulness is a factor with expert testimony, the role of the expert is not to proffer the facts, but assist the court in finding the truth. N.J.R.E. 702. Finding an expert's testimony not credible, does not necessarily equate with untruthfulness, but may merely constitute a rejection of the theory presented. On the other hand, finding a fact witness not credible, many times points to a lack of candor or truthfulness.[2]

In a typical tax appeal, each side has an expert, either an assessor or appraiser. The experts provide differing testimony as to what the property is worth. Just because the court rejects some or all the testimony of an expert does not equate with a lack of candor or untruthfulness. Rather, it reflects the courts rejection of the

---

[2]  Finding a lack of credibility does not automatically equate with a determination the witness is lying. For example, a witness on a dark street may mistakenly identify the perpetrator of a crime.

theory advanced by the expert for valuation of the property. Reasonable minds can differ as to the valuation. The court arrives at a value based upon the input from both experts whose role is to assist the court.

In this case, the assessor is not merely defending her assessments of the property. If only the initial assessments were at issue, the court's disagreement with the assessments does not automatically mean the assessor lacks candor or truthfulness. It may merely reflect a difference of opinion. By offering differing opinions of value, the assessor has not only placed the credibility of her theory of value at issue but has also placed her personal credibility at issue.

The first valuation is part of the computer assisted mass appraisal for the municipality and certified by the assessor as correct. The second is the eighty-page appraisal report specifically prepared for the property at issue. No longer is this case only about the assessor's theory of valuation competing with that of the appraiser for the taxpayer.

By offering the assessor's testimony as to an increase, the municipality places the assessor out on a tightrope. To stay on this tightrope, the assessor must balance the competing crosswinds of her current report gusting against the initial assessments prepared with computer assisted mass appraisal. There may be a way to reconcile the two, however, the conflicting valuations make the job of the municipality more difficult.

Falling to one side of this testimonial tightrope, if the assessor provides a credible explanation as to why her initial assessments are wrong, it raises the question whether the computer assisted mass appraisal technique utilized by the municipality is incorrectly assessing properties. Cf. Forsgate Ventures IX LLC v. Township of South Hackensack, 29 N.J. Tax 28, 45 (Tax 2016); Pallsadium Management Corp. v. Borough of Cliffside Park, 29 N.J. Tax 245, 263 (Tax 2016). This is not the first time the assessor found the technique to be wanting. In 2019, the assessor prepared a report for the same property setting the assessment greater than the mass appraisal determination. As made known during oral argument, she has prepared individual appraisals for other properties. Whether appeals triggered these appraisals is unknown. The percentage of her appraisals finding increases or decreases is also unknown.

Falling to the other side of the testimonial tightrope, if this court keeps the assessments the same or reduces the assessments, such a finding may or may not call into question the assessor's candor with this tribunal. While the assessor does not have an explicit obligation such as an attorney to provide candor to the tribunal, she is an independent legislative agent performing quasi-judicial functions, not an advocate for one side or the other. VNO, 33 N.J. Tax at 26. Candor and zealous advocacy have long been in tension for attorneys. See Brundage v. Estate of Carambio, 195 N.J. 595, 602 (1995). Assessors face a similar tension.

The assessor's duties and that of the municipality differ at times. The assessor's obligation is to the Legislature. The municipality's obligation is to the taxpaying public in the municipality. The assessor has tenure in her employment and is accountable to the Director. The municipal leaders are subject to periodic election by the individual taxpayers and other individuals living in the municipality. While both the municipality and the assessor must turn square corners, the municipality, unlike the assessor, does not have independent quasi-judicial duties. See F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426 (1985) (square corners); VNO, 33 N.J. Tax at 26 (quasi-judicial).

Our Constitution requires uniform assessment of property. N.J. Const. art. VIII, §1, ¶1(a). Commercial taxpayers do not pay taxes at a different rate. Having the assessor as an independent legislative agent furthers the mandate of uniformity. The assessor is not subject to the pressure of voting residential taxpayers attempting to raise more taxes from nonvoting commercial taxpayers, nor the influence of campaign contributing commercial taxpayers seeking to pay less than their fair share to the detriment of residential taxpayers. The Court is not suggesting that either is true in this case, but merely emphasizing why the independence of the assessor is critical to upholding the mandate of uniformity enshrined in our Constitution.

An appropriate explanation may exist for the assessor revising her assessments upward. On the other hand, there may not be. "Cross-examination is

the greatest legal engine ever invented for the discovery of truth. Courts have a broad discretion in determining the scope of cross-examination." State v. Silva, 131 N.J. 438, 444 (1993) (citations omitted). It is without doubt "that prior inconsistent statements may be used to impeach the credibility of a witness." Id. at 444-45. Taxpayer's counsel is going to have a full and fair opportunity to engage in vigorous cross-examination. The court is confident the skill of counsel for both sides will reveal the truth.

The taxpayer is not satisfied with the opportunity for vigorous cross-examination. The taxpayer seeks to bar the assessor from testifying. However, "[r]esort to a court's inherent expert-excluding authority 'is a drastic measure that courts should impose only hesitantly, reluctantly, and rarely.'" VNO, 33 N.J. Tax at 40 (quoting In re Pelvic Mesh/Gynecare Litig., 426 N.J. Super. 167, 198 (App. Div. 2012) (Sabatino, J., concurring)). The court considers several factors. "First, a party enjoys a 'presumptive right to designate one or more expert witnesses.'" VNO, 33 N.J. Tax at 40 (quoting In re Pelvic Mesh, 426 N.J. Super. at 196 (Sabatino, J., concurring)). The municipality has designated the assessor in this case. The court is not going to dictate to the municipality how it should litigate its case. However, the court is mindful of the duties and obligations of the assessor as an independent agent of the Legislature. The municipality cannot compel the assessor to challenge a recent assessment unless she voluntarily agrees to do so. In other words, while the

municipality may be free to designate the assessor as a witness, it does not have the right to direct an assessor to advocate for an increased assessment.  It is unknown how the assessor now comes before the court.  Unlike an attorney, who can ethically represent a client despite disagreement with the client's views, the assessor's role "in his relation to the municipality, is in much the same position as a magistrate." Mobil Oil, 20 N.J. Tax at 81 (quoting Clinton Twp. Citizens Comm. v. Township of Clinton, 185 N.J. Super. 343, 354 (Law Div. 1982)).  See also RPC 1.2(b) (attorney representation does not constitute endorsement of client views).

"Second, the exclusion of any relevant testimony undermines the search for the truth."  VNO, 33 N.J. Tax at 41.  The assessor may have a reasonable rationale for wanting to increase the assessments.  That is certainly a question of fact the court must evaluate after examination and cross-examination of the assessor.

The taxpayer asserts that the assessor's testimony will breach a duty.  Since this is a factual determination, the court must first hear testimony to determine a breach of duty.  Since the court is the finder of fact, there are not the same concerns present when a jury is a factfinder.  See e.g., N.J.R.E. 104(a) (separate hearing for preliminary matter if jury).  Only upon hearing the assessor's testimony will this court be able to determine whether there is a breach of duty.  If indeed the court does find that there is a breach of duty, the court will then have to determine whether to disregard her testimony in total which is the equivalent of barring her testimony.

-11-

The record is incomplete at this juncture for the court to reach any conclusion as to the assessor's testimony.

"The determination of the evidential value and weight to be given to the testimony of [an expert] . . . depends upon [the expert's] candor, intelligence, knowledge, experience, and especially upon the facts and reasoning . . . offered as the foundation of [the] opinion[]." Coastal Eagle Point Oil Co. v. Township of West Deptford, 13 N.J. Tax 242, 299-300 (Tax 1993), aff'd. o.b., 15 N.J. Tax 190 (App. Div. 1995). The parties need not be concerned with the "poisoning of the well" by the court hearing the testimony of the assessor. Just because she is an independent agent of the Legislature, does not mean that her testimony is sacrosanct. The tax court has a special expertise for tax matters. Yilmaz Inc. v. Dir., Div. of Tax'n, 390 N.J. Super. 435, 443 (App. Div. 2007). Just because the assessor says it's so, does not mean it is so. The court can give her testimony the weight it deserves.

Finally, the court should tread cautiously when relying on the inherent power to exclude witnesses, mindful that the Supreme Court alone may establish rules of practice. VNO, 33 N.J. Tax at 41. There is certainly no rule of practice that excludes the testimony of an assessor in favor of raising her prior assessment. There certainly may be a reasonable explanation to raise the assessment.

Furthermore, in light of this opinion, the court will certainly give the municipality time to retain another expert if the assessor reconsiders and declines to

testify as to raising the assessment.  This would ensure the court fulfills its duty to set the assessments at the proper value.

IV.    CONCLUSION

For the foregoing reasons, the court denies the taxpayer's motion.